1 | AJ KUNG, ESQ.
Nevada Bar No. 7052
2 | BRANDY BROWN, ESQ.
Nevada Bar No. 9987
3 | KUNG & BROWN
214 South Maryland Parkway
4 | Las Vegas, Nevada 89101
(702) 382-0883
5 | (702) 387-2720 Fax
ajkung@ajkunglaw.com
6 | bbrown@ajkunglaw.com
7 | *Attorneys for Debtor*

8

**UNITED STATES BANKRUPTCY COURT**

9

**DISTRICT OF NEVADA**

10 | In re:                                    Case No. BK-15-15722
                                            Chapter 11
11 | CAPRIATI CONSTRUCTION CORP. INC.

12 |                    Debtor.              Consolidated Disclosure Statement and
                                            Confirmation Hearing
13

14 |                                         ~~Date:    April 8, 2016~~

15 |                                         Date:
                                            Time:

16 |                                         ~~Time:    9:30 a.m.~~

17

18

19 | # DEBTOR'S ~~SECOND~~ THIRD AMENDED
# PLAN OF REORGANIZATION

20

21 | . . .

22 | . . .

23 | . . .

24 | . . .

25 | . . .

26 | . . .

27 | . . .

28 | . . .

1



**Formatted:** Font: Not Bold

1
2

# TABLE OF CONTENTS

**1. DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME** ...... 7

**1.1.** Definitions. ............................................................................................................... 7

**1.1.1.** Administrative Claim. ........................................................................................ 7

**1.1.2.** Administrative Claim Bar Date. ........................................................................ 7

**1.1.3.** Allowed Administrative Claim. ..........................................................................7

**1.1.4.** Allowed. ............................................................................................................... 7

**1.1.5.** Allowed Equity Security. ................................................................................... 8

**1.1.6.** Assets. .................................................................................................................. 8

**1.1.7.** Avoidance Actions. ............................................................................................. 8

**1.1.8.** Ballot. ................................................................................................................... 8

**1.1.9.** Bankruptcy Code. ............................................................................................... 8

**1.1.10.** Bankruptcy Court. ............................................................................................. 8

**1.1.11.** Bankruptcy Rules ............................................................................................... 8

**1.1.12.** Bar Date. ............................................................................................................. 8

**1.1.13.** Business Day. ...................................................................................................... 8

**1.1.14.** Cash. .................................................................................................................... 8

**1.1.15.** Chapter 11 Case. ................................................................................................ 9

**1.1.16.** Claim. ................................................................................................................... 9

**1.1.17.** Class. .................................................................................................................... 9

**1.1.18.** Collateral. ............................................................................................................ 9

**1.1.19.** Confirmation. ...................................................................................................... 9

**1.1.20.** Confirmation Date. ............................................................................................ 9

**1.1.21.** Confirmation Hearing. ...................................................................................... 9

**1.1.22.** Confirmation Order ........................................................................................... 9

**1.1.23.** Contingent Claim. ............................................................................................. 9

**1.1.24.** Creditor. .............................................................................................................. 9

**1.1.25.** Cure. .................................................................................................................... 9

**1.1.26.** Cure Order ........................................................................................................10

**1.1.27.** Debtor ................................................................................................................10

**1.1.28.** Disclosure Statement ......................................................................................10

**1.1.29.** Disputed Claim or Disputed Equity Security. ..............................................10

**1.1.30.** Distributable Assets. ........................................................................................10

**1.1.31.** Distribution. .....................................................................................................10

**1.1.32.** Effective Date...................................................................................................10

2

3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28

**1.1.33.** Equity Security. ...................................................................................10

**1.1.34.** Estate. ....................................................................................................10

**1.1.35.** Executory Contract ................................................................................10

**1.1.36.** Final Order ............................................................................................11

**1.1.37.** General Unsecured Claim ......................................................................11

**1.1.38.** Holder ....................................................................................................11

**1.1.39.** Impaired ................................................................................................11

**1.1.40.** Lien. ......................................................................................................11

**1.1.41.** Litigation Claims ..................................................................................11

**1.1.42.** Loan Documents ....................................................................................11

**1.1.43.** Nevada Secretary ..................................................................................11

**1.1.44.** NRS ........................................................................................................11

**1.1.45.** Other Priority Claims ............................................................................11

**1.1.46.** Person ....................................................................................................11

**1.1.47.** Petition Date. ........................................................................................11

**1.1.48.** Plan. ......................................................................................................11

**1.1.49.** Professional Fees ..................................................................................12

**1.1.50.** Pro Rata ................................................................................................12

**1.1.51.** Record Date. ..........................................................................................12

**1.1.52.** Reinstated or Reinstatement ..................................................................12

**1.1.53.** Reorganized Debtor. ..............................................................................12

**1.1.54.** Schedules ..............................................................................................12

**1.1.55.** Secured Claim ........................................................................................12

**1.1.56.** Secured Lender ......................................................................................12

**1.1.57.** Secured Lender Claim ............................................................................12

**1.1.58.** Secured Loan. ........................................................................................13

**1.1.59.** Taxes. ....................................................................................................13

**1.1.60.** Unimpared ............................................................................................13

**1.1.61.** Computation of Time. ............................................................................13

**1.1.62.** Rules of Interpretation ..........................................................................13

**1.2.** Exhibits and Plan Schedules ......................................................................13

**2. TREATMENT OF UNCLASSIFIED CLAIMS** ............................................13

**2.1.** General. ......................................................................................................13

**2.2.** Treatment of Administrative Claims ..........................................................13

**2.3.** Requests for Payment. ................................................................................13

**2.4.** Allowed Priority Tax Claims. ....................................................................14

3

**3. DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS** ......................14

**3.1.** Summary of Classification. ........................................................ 14

**3.2.** Specific Classification. ............................................................... 14

**3.2.1.** Class 1: Nations Fund I, LLC ............................................... 14

**3.2.2.** Class 2:  Caterpillar Financial Services Corp. ....................... 14

**3.2.3.** Class 3: John Deere Construction & Forestry.......................... 14

**3.2.4.** Class 4:  Ford Credit………….. ........................................... 14

**3.2.5.** Class 5:  Don Ahern ............................................................. 14

**3.2.6**  Class 6:  Ally                                                             14

**3.2.7**  Class 7:  Plaza Bank…...........................................................  14

**3.2.8**  Class 8:  Zurich                                                          14

**3.2.9**  Class 9:  Entrust….............................................................…... 15

**3.2.10**  Class 10:  Valley Bank ........................................................ 15

**3.2.11**  Class 11:  Mechanic's Lien Claimants – Joint-Check Agreement Parties................  15

**3.2.12**  Class 12:  General Unsecured Claims …....................................  15

**3.2.13**  Class 13:  Equity Security Holder .........................................15

**4. DESIGNATION OF AND PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS UNDER THIS PLAN** ........................................................... 15

**4.1** Class 1: Nations Fund I, LLC …................................................... 15

**4.2.** Class 2:  Caterpillar Financial Services Corp. ............................. 16

**4.3.** Class 3:  John Deere Construction & Forestry. ........................... 16

**4.4** Class 4:  Ford Credit………….. ................................................. 16

**4.5** Class 5:  Don Ahern…............................................................... 17

**4.6** Class 6:  Ally .............................................................................17

**4.7** Class 7:  Plaza Bank…............................................................…17

**4.8** Class 8:  Zurich .......................................................................18

**4.9** Class 9:  Entrust…....................................................................18

**4.10**  Class 10:  Valley Bank ...........................................................18

**4.11**  Class 11:   Mechanic's Lien Claimants – Joint-Check Agreement Parties................  19

**4.12**  Class 12: General Unsecured Claims …...................................  19

**4.13**  Class 13 - Equity Securities. ..................................................19

**5. MEANS FOR IMPLEMENTATION OF PLAN** ............................... 19

**5.1.** Reorganized Debtor. ................................................................ 19

**5.3.** Effectiveness of the Loan Documents. ...................................... 19

**5.5.** Post-Effective Date Management of Reorganized Debtor. ........... 19

**5.6.** Notice of Effectiveness. ...........................................................19

4

**5.7.** No Governance Action Required. ...............................................................19

**6. EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .......................... 20

**6.1.** Executory Contracts. .............................................................................. 20

**6.2.** Approval of Assumption or Rejection. ..................................................... 21

**6.3.** Cure of Defaults. ..................................................................................... 21

**6.4.** Objection to Cure Amounts. .................................................................... 21

**6.5.** Confirmation Order. ................................................................................ 21

**6.6.** Post-Petition Date Contracts and Leases. ................................................ 21

**6.7.** Bar Date. ................................................................................................. 22

**7. MANNER OF DISTRIBUTION OF PROPERTY UNDER THIS PLAN** ........... 22

**7.1.** Distributions. ........................................................................................... 22

**7.2.** Statements. ............................................................................................... 22

**7.3.** Further Authorization. ............................................................................. 22

**8. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE** ... 22

**8.1.** Conditions to Confirmation. ..................................................................... 22

**8.2.** Conditions to Effectiveness. ..................................................................... 22

**8.3.** Waiver of Conditions. .............................................................................. 22

**9. TITLE TO PROPERTY; DISCHARGE; INJUNCTION** ...............................23

**9.1.** Vesting of Assets. .................................................................................... 23

**9.2.** Preservation of Litigation Claims. ........................................................... 23

**9.3.** Discharge. ................................................................................................ 23

**9.4.** Injunction. ............................................................................................... 23

**9.5.** Exculpation. ............................................................................................ 23

**10. RETENTION OF JURISDICTION** .........................................................24

**10.1.** Jurisdiction. ...........................................................................................24

**11. MODIFICATION AND AMENDMENT OF PLAN** ....................................25

**11.1.** Modification and Amendment. ...............................................................25

**12. MISCELLANEOUS** ............................................................................25

**12.1.** Filing of Objections to Claims or Equity Securities. ..............................25

**12.1.1.** Resolution of Objections After Effective Date. ....................................25

**12.1.2.** Distributions .........................................................................................25

**12.1.3.** Late-Filed Claims. ................................................................................26

**12.2.** Effectuating Documents; Further Transactions; Timing. .........................26

**12.3.** Exemption from Transfer Taxes. ............................................................26

**12.4.** Revocation or Withdrawal of this Plan. ..................................................26

**12.5.** Binding Effect. .......................................................................................26

**12.6.** Governing Law. ......................................................................................26

5

**12.7.** Modification of Payment Terms. ...................................................27

**12.8.** Providing for Claims Payments. ...................................................27

**12.9.** Set Offs. ...................................................27

**12.10.** Notices. ...................................................27

**12.11.** Severability. ...................................................28

**12.12.** Witholding and Reporting Requirements. ...................................................28

**12.13.** Post-Confirmation Reporting ...................................................28

**12.14.** Cramdown ...................................................28

**12.15.** Quarterly Fees to the United States Trustee. ...................................................29

6

Capriati Construction Corp., Inc., a Nevada limited liability company ("Debtor") proposes this plan of reorganization (the "Plan") for the resolution of Debtor's outstanding Claims and Equity Securities (as these terms are defined herein). All Creditors, Equity Security Holders (as both terms are defined herein), and other parties-in-interest should refer to the Disclosure Statement (as this term is defined herein) for a discussion of Debtor's history, assets, historical financial data, and for a summary and analysis of this Plan and certain related matters. All Holders of Claims against and Equity Securities in Debtor are encouraged to read this Plan, the Disclosure Statement, and the related solicitation materials in their entirety before voting to accept or reject this Plan.

Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and those restrictions on modifications set forth in Article 11 to this Plan, Debtor expressly reserves the right to alter, amend, strike, withdraw, or modify this Plan one or more times before its substantial consummation.

**1. DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME**

**1.1. Definitions.** For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article 1. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, in that order of priority. Whenever the context requires, such terms shall include the plural as well as the singular, the masculine gender shall include the feminine, and the feminine gender shall include the masculine. As used in this Plan, the following terms shall have the meanings specified below:

**1.1.1. Administrative Claim.** A Claim for any cost or expense of administration of the Chapter 11 Case allowed under Sections 503(b) or 507(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including, but not limited to: (i) fees payable pursuant to 28 U.S.C. § 1930; (ii) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case; and (iii) all Professional Fees approved by the Bankruptcy Court pursuant to interim and final allowances. To the extent that a Claim is allowed pursuant to Sections 365(d)(3) and (d)(5) of the Bankruptcy Code, such Claim shall also be deemed an "Administrative Claim" under this paragraph.

**1.1.2. Administrative Claim Bar Date.** The end of the first Business Day occurring on or after the thirtieth (30th) calendar day after the Effective Date.

**1.1.3. Allowed Administrative Claim.**

An Administrative Claim:

(a) As to which no objection has been filed or, if an objection has been filed, has been resolved by the allowance of such Administrative Claim by a Final Order of the Bankruptcy Court; or

(b) Which requires payment in the ordinary course and as to which there is no Final Order of the Bankruptcy Court in effect which prohibits any such payment.

**1.1.4. Allowed.** As to a Claim or any portion thereof that is not a Disputed Claim: (a) that is allowed pursuant: (i) to this Plan or Final Order of the Bankruptcy Court; (ii) to any stipulation executed prior to the Confirmation Date and approved by the Bankruptcy Court, (iii) to any stipulation with Debtor or Reorganized Debtor executed on or after the Confirmation Date and

approved by the Bankruptcy Court, or (iii) to any contract, instrument, or other agreement entered into or assumed in connection herewith; (b) proof of which, request for payment of which, or application for allowance of which, was filed or deemed to be filed on or before the Bar Date for filing proofs of Claim or requests for payment of Claims of such type against Debtor; or (c) if no proof of Claim is filed, which has been or hereafter is listed by Debtor in the Schedules as liquidated in amount and not disputed or contingent; and in the case of (b) or (c), no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or the Bankruptcy Court has entered a Final Order Allowing all or a portion of such Claim.

**1.1.5. Allowed Equity Security**.  An Equity Security as of the Record Date that: (i) is allowed pursuant to this Plan; (ii) is not disputed by Debtor or Reorganized Debtor, as the case may be; or (iii) if a Disputed Equity Security, which Equity Security has been allowed in whole or in part by Final Order of the Bankruptcy Court.

**1.1.6. Assets**.  All of the assets, property, interests, and effects, real and personal, tangible and intangible, wherever situated, of Debtor, as they exist on the Effective Date.

**1.1.7 Avoidance Actions**.  All avoidance, recovery, subordination, and other similar actions preserved for the Estate under the Bankruptcy Code, including but not limited to those set forth in Sections 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code, regardless of whether or not such action has been commenced prior to the Effective Date.

**1.1.8. Ballot**.  The form of ballot that will be distributed with the Disclosure Statement to Holders of Claims entitled to vote under this Plan in connection with the solicitation of acceptances of this Plan.

**1.1.9. Bankruptcy Code**.  The Bankruptcy Reform Act of 1978, Title 11, United States Code, as applicable to the Chapter 11 Case, as now in effect or hereafter amended, 11 U.S.C. §§ 101, et seq.

**1.1.10. Bankruptcy Court**.  The United States Bankruptcy Court for the District of Nevada having jurisdiction over the Chapter 11 Case and, to the extent of the withdrawal of any reference under Section 157 of Title 28 of the United States Code and/or the General Order of the United States District Court for the District of Nevada pursuant to Section 151 of Title 28 of the United States Code, the United States District Court for the District of Nevada.

**1.1.11. Bankruptcy Rules**.  Collectively, the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075 and the general, local, and chamber rules of the Bankruptcy Court as applicable to the Chapter 11 Case, as now in effect or hereinafter amended.

**1.1.12. Bar Date**.  The date or dates established by the Bankruptcy Court, the Bankruptcy Code, and/or the Bankruptcy Rules for the filing of proofs of Claim for all Creditors, excepting therefrom, Administrative Claims.

**1.1.13. Business Day**.  Any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)) and with regard to Bankruptcy Rule 9006(c) in Nevada.

**1.1.14. Cash**.  The legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, negotiable instruments, wire transfers of immediately available funds, or other cash equivalents.

8

**1.1.15. Chapter 11 Case**.  The case under Chapter 11 of the Bankruptcy Code involving Debtor, having case number 15-15722-ABL, including all adversary proceedings pending in connection therewith.

**1.1.16. Claim**.  Any right to payment from Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured arising at any time before the Effective Date or relating to any event that occurred before the Effective Date, or any right to an equitable remedy arising at any time before the Effective Date for breach of performance if such breach gives rise to a right of payment from Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.1.17. Class**.  A category of Holders of Claims or Equity Securities as classified in this Plan.

**1.1.18. Collateral**.  All Assets in which a Secured Lender has liens and security interests pursuant to the Loan Documents or the Cash Collateral Order, as modified by any Court Order, including, without limitation, the collateral which secures the replacement liens granted to any Secured Lender in any Cash Collateral Stipulation and/or Order.

**1.1.19. Confirmation**.  The entry by the Bankruptcy Court of the Confirmation Order on the docket of the Chapter 11 Case.

**1.1.20. Confirmation Date**.  The date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

**1.1.21. Confirmation Hearing**.  The duly-noticed initial hearing held by the Bankruptcy Court to confirm this Plan pursuant to Section 1128 of the Bankruptcy Code, and any subsequent hearing held by the Bankruptcy Court from time to time to which the initial hearing is adjourned without further notice other than the announcement of the adjourned dates at the Confirmation Hearing or by a subsequent order of the Bankruptcy Court.  The Confirmation Hearing will also include the hearing on final approval of the Disclosure Statement.

**1.1.22. Confirmation Order**.  The order, together with any findings of fact and conclusions of law, entered by the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code, which shall be in form, content, and detail reasonably acceptable to both Debtor and Secured Lender.

**1.1.23. Contingent Claim**.  A Claim which is contingent, unmatured, or unliquidated on or immediately before the Confirmation Date.

**1.1.24. Creditor**.  Any Holder of a Claim, whether or not such Claim is an Allowed Claim.

**1.1.25. Cure**.  The distribution on the Effective Date or as soon thereafter as practicable of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an Executory Contract or Unexpired Lease pursuant to Section 365(b) of the Bankruptcy Code, or with respect to any other debt instrument, including the Secured Loan, in an amount equal to: (i) all unpaid monetary obligations due under such executory contract or unexpired lease or required to be paid to bring current the debt instrument (including the Secured Loan) and thereby reinstate the debt and return to the pre-default conditions to the extent such obligations are enforceable under the Bankruptcy Code or applicable non-bankruptcy law; and (ii) with respect to any debt instrument, if a claim arises from a debtor's

9

failure to perform any non-monetary obligation as set forth in Sections 1124(2)(C) and 1124(2)(D) of the Bankruptcy Code, payment of the dollar amount which compensates the Holder of such a claim for any actual pecuniary loss incurred by such Holder as a result of any such failure and the dollar amount of the Claim that is established by the Holder's sworn declaration and accompanying admissible evidence filed with the Bankruptcy Court and served upon Debtor's counsel on or before such date ordered by the Court for the filing of objections to the disclosure statement.

**1.1.26. Cure Order**.   Any final order of the Bankruptcy Court determining the amount necessary to Cure and Reinstate any Secured Loan.

**1.1.27. Debtor**.   Capriati Construction Corp., Inc., the debtor and debtor-in-possession in the Chapter 11 Case pursuant to Section 1108 of the Bankruptcy Code.

**1.1.28. Disclosure Statement**.   The disclosure statement that relates to this Plan, as amended, supplemented, or modified from time to time, describing this Plan that is prepared and distributed in accordance with, among others, Sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law.

**1.1.29. Disputed Claim or Disputed Equity Security**.   A Claim or Equity Security which is: (i) subject to timely objection interposed by Debtor, Reorganized Debtor, or any party-in-interest entitled to file and prosecute such objection in the Chapter 11 Case, if at such time such objection remains unresolved; or (ii) a Claim that is listed by Debtor as disputed, unliquidated, or contingent in the Schedules; provided, however, that the Bankruptcy Court may estimate a Disputed Claim for purposes of allowance pursuant to Section 502(c) of the Bankruptcy Code.  The term "Disputed," when used to modify a reference in this Plan to any Claim or Class of Claims or Equity Security, shall mean a Claim or Equity Security (or any Claim or Equity Security in such Class) that is a Disputed Claim or Disputed Equity Security as defined herein.  In the event there is a dispute as to classification or priority of a Claim or Equity Security, it shall be considered a Disputed Claim or Disputed Equity Security in its entirety.  Until such time as a Contingent Claim becomes fixed and absolute, such Claim shall be treated as a Disputed Claim and not an Allowed Claim for purposes related to allocations and distributions under this Plan.

**1.1.30. Distributable Assets**.   The Assets distributable to Allowed Claims and unclassified Claims that have been allowed by a Final Order, including Allowed Administrative Claims as provided for in this Plan and the Confirmation Order.

**1.1.31. Distribution**.   Any distribution by Debtor or Reorganized Debtor of Distributable Assets to the Holders of Allowed Claims or Equity Securities as of the Record Date.

**1.1.32. Effective Date.**   The latest to occur of: (i) the first Business Day that is at least fourteen (14) days after the Confirmation Date and on which no stay of the Confirmation Order is in effect; and (ii) the first (1st) Business Day on which all of the conditions set forth in Article 8 to this Plan have been satisfied or waived.

**1.1.33. Equity Security**.   An equity security as the term is defined in Section 101(16) of the Bankruptcy Code and includes the membership interests in Debtor and any warrants, options, redemption rights, dividend rights, liquidation preferences, rights to purchase any such Equity Security, or any other rights related thereto.

**1.1.34. Estate**.   The estate created for Debtor in the Chapter 11 Case pursuant to Section 541 of the Bankruptcy Code.

**1.1.35. Executory Contract**.   A contract to which Debtor is a party that is subject to

10

assumption or rejection under Section 365 of the Bankruptcy Code.

**1.1.36. Final Order**.  An order, judgment, or other decree of the Bankruptcy Court, or other court of competent jurisdiction, entered on the docket of such court, that has not been reversed, reconsidered, stayed, modified, or amended, that is in full force and effect, and as to which order or judgment: (i) the time to appeal, seek review or rehearing, or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand, or certiorari is pending; (ii) any appeal taken or petition for certiorari or request for reargument or further review or rehearing filed: (a) has been resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, or certiorari was sought; or (b) has not yet been resolved by such highest court, but such order has not been stayed pending appeal.  Notwithstanding the foregoing, the Confirmation Order shall specifically become a Final Order on the first Business Day that is fourteen (14) days after the entry of such Confirmation Order unless any appeal of such Confirmation Order is accompanied by a stay pending appeal.

**1.1.37.  General Unsecured Claim**.  A Claim that is not secured by a Lien in property in which the Estate has an interest and is not an unclassified Claim or Other Priority Unsecured Claim.  General Unsecured Claims shall also include all Claims arising under Section 502(g) of the Bankruptcy Code.

**1.1.38. Holder**.  An entity holding an Equity Interest or Claim.

**1.1.39. Impaired**.  Impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.1.40. Lien**.  This term shall have the meaning set forth in Section 101(37) of the Bankruptcy Code.

**1.1.41. Litigation Claims**.  All rights, claims, torts, liens, liabilities, obligations, actions, causes of action, Avoidance Actions, derivative actions, proceedings, debts, contracts, judgments, damages and demands whatsoever in law or in equity, whether known or unknown, contingent or otherwise, that Debtor or the Estate may have against any Person.

**1.1.42.  Loan Documents.**  Collectively, any Secured Loan Agreement, Security Agreements, and any and all amendments, supplements, or modifications to the foregoing, as well as any and all other documents pertaining to any Secured Loan.

**1.1.43**. **Nevada Secretary.**  The Secretary of State of the State of Nevada.

**1.1.44. NRS.**  The Nevada Revised Statutes, as amended from time to time.

**1.1.45**. **Other Priority Claims.**  Any and all Claims accorded priority in right of payment under Section 507(a) of the Bankruptcy Code.

**1.1.46. Person**.  An individual, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization or government, governmental unit, or any subdivision thereof or any other entity.

**1.1.47. Petition Date**. October 7, 2015, the date on which a voluntary Chapter 11 petition was filed by Debtor, thereby commencing the Chapter 11 Case.

**1.1.48. Plan**.  This plan of reorganization, either in its present form or as it may be amended, supplemented, or modified from time to time, including all exhibits and schedules annexed hereto or referenced herein.

**1.1.49**. **Professional Fees**. The Administrative Claims for compensation and reimbursement submitted pursuant to Sections 328, 330, 331, or 503(b) of the Bankruptcy Code of Persons: (i) employed pursuant to an order of the Bankruptcy Court under Section 327 or 328 of the Bankruptcy Code; or (ii) for whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b) of the Bankruptcy Code or by other Final Order.

**1.1.50**. **Pro Rata**. The ratio of an Allowed Claim or Equity Security in a particular class to the aggregate amount of all such Allowed Claims or Allowed Equity Securities in any such Class.

**1.1.51**. **Record Date**. January 20, 2016.

**1.1.52**. **Reinstated or Reinstatement**. These terms shall mean: (i) leaving unaltered the legal, equitable, and contractual rights of the Holder of a Claim so as to leave such Claim Unimpaired in accordance with Section 1124 of the Bankruptcy Code; or (ii) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default: (a) Curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in Section 365(b)(2) of the Bankruptcy Code; (b) reinstating the maturity of such Claim as such maturity existed before such default; (c) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; and (d) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants, or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence prohibiting certain transactions or actions contemplated by this Plan, or conditioning such transactions or actions on certain factors, shall not be required in order to accomplish Reinstatement.

**1.1.53. Reorganized Debtor**. Debtor as reorganized pursuant to this Plan after the Effective Date by merger, consolidation, or otherwise.

**1.1.54. Schedules**. The schedules of assets and liabilities and any amendments thereto filed by Debtor with the Bankruptcy Court in accordance with Section 521(1) of the Bankruptcy Code.

**1.1.55. Secured Claim**. A Claim that is secured by a Lien against property of the Estate to the extent of the value of any interest in such property of the Estate securing such Claim, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or to the extent of the amount of such Claim subject to setoff in accordance with Section 553 of the Bankruptcy Code, in either case as determined pursuant to Section 506(a) of the Bankruptcy Code.

**1.1.56. Secured Lender**. Any person or entity having any rights, title, or interest to or under any Secured Loan.

**1.1.57. Secured Lender Claim**. The amount due and owing to any Secured Lender under the Secured Loan and the Loan Documents as determined by entry of a final order of the Bankruptcy Court.

**1.1.58. Secured Loan**.  The secured loans as set forth in the Disclosure Statement as borrower, and evidenced by the Loan Documents.

**1.1.59. Taxes**.  All income, gaming, franchise, excise, sales, use, employment, withholding, property, payroll, or other taxes, assessments of governmental charges, together with any interest penalties, additions to tax, fines, and similar amounts relating thereto, whether or not yet assessed or imposed, collected by, or due to any federal, state, local or foreign governmental authority.

**1.1.60. Unimpaired**.  Unimpaired shall have the meaning set forth in Section 1124 of the Bankruptcy Code.

**1.1.61. Computation of Time**.  In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

**1.1.62. Rules of Interpretation**.  For purposes of this Plan only; (i) any reference in this Plan to a contract, instrument, release, or other agreement or documents being in particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (ii) any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (iii) unless otherwise specified, all references in this Plan to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to this Plan; (iv) the words "herein," "hereof," "hereto," and "hereunder" refer to this Plan in its entirety rather than to a particular portion of this Plan; (v) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; and (vi) the rules of construction and definitions set forth in Sections 101 and 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply unless otherwise expressly provided.

**1.2. Exhibits and Plan Schedules**.  All exhibits and schedules attached to this Plan are incorporated into and are a part of this Plan as if set forth in full herein.

**2. TREATMENT OF UNCLASSIFIED CLAIMS**

**2.1. General**.  Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the Claims against Debtor set forth in this Article 2 are not classified within any Classes.  The Holders of such Claims are not entitled to vote on this Plan.  The treatment of the Claims set forth below is consistent with the requirements of Section 1129(a)(9)(A) of the Bankruptcy Code.

**2.2. Treatment of Administrative Claims**.  Each Allowed Administrative Claim shall be paid by Reorganized Debtor (or otherwise satisfied in accordance with its terms) upon the latest of:  (i) the Effective Date or as soon thereafter as is practicable; (ii) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (iii) the fourteenth (14th) Business Day after such Claim is Allowed, or as soon thereafter as practicable; and (iv) such date as the Holder of such Claim and Debtor shall agree upon.

**2.3. Requests for Payment**.  All requests for payment of Administrative Claims against Debtor and all final applications for allowance and disbursement of Professional Fees must be filed by the Administrative Claims Bar Date or the Holders thereof shall be forever barred from asserting such Administrative Claims against Debtor and the Reorganized Debtor.  All Professional

13

Fees applications must be in compliance with all of the terms and provisions of any applicable order of the Bankruptcy Court, including the Confirmation Order, and all other orders governing payment of Professional Fees. Unless otherwise ordered by the Bankruptcy Court, from and after the Effective Date, no professional shall be required to file fee applications with the Bankruptcy Court and Reorganized Debtor may pay all professionals in the ordinary course for fees and expenses incurred after the Effective Date.

        **2.4. Allowed Priority Tax Claims**. Each Allowed Priority Tax Claim, if any, will be paid in full by Reorganized Debtor: (i) in regular installments aid over a period not to exceed 5 years from the order of relief; or (ii) such other time as is agreed to by the Holder of such Claim and Debtor prior to the Effective Date or the Reorganized Debtor after the Effective Date.

        The Nevada Department of Taxation will  be paid in full by Reorganized Debtor: (i) in regular installments paid over a period not to exceed 5 years from the order of relief at nine percent (9%) interest per annum.  Additionally, nothing in this Plan shall prevent the Nevada Department of Taxation from proceeding against any and all responsible persons as defined by NRS 360.297.

### 3. DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS

        Pursuant to this Plan and in accordance with Section 1123(a)(1) of the Bankruptcy Code, all Claims of Creditors and the Holders of Equity Securities (except Administrative Claims and Priority Tax Claims) are placed in the Classes described below. A Claim or Equity Security is classified in a particular Class only to the extent that the Claim or Equity Security qualifies within the description of that Class and is classified in other Classes only to the extent that any remainder of the Claim or Equity Security qualifies within the description of such other Classes. A Claim or Equity Security is also classified in a particular Class only to the extent that such Claim or Equity Security is an Allowed Claim or Allowed Equity Security in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date. With respect to Classes of Claims described as Unimpaired under this Plan, except as otherwise provided under this Plan, nothing shall affect the rights and legal and equitable defenses of Debtor and Reorganized Debtor regarding such Claims classified as Unimpaired under this Plan, including but not limited to, all rights in respect of legal and equitable defenses to setoff or recoupment against such Claims.

        **3.1. Summary of Classification**.

        **3.2. Specific Classification**.

        **3.2.1. Class 1: Nations Fund I, LLC - Secured Lender Claim**. Class 1 consists of the Allowed Secured Lender Claim of Nations Fund I, LLC.

        **3.2.2. Class 2:  Caterpillar Financial Services Corp. – Secured Lender Claim**. Class 2 consists of the Allowed Secured Lender Claim of Caterpillar Financial Services Corp.

        **3.2.3. Class 3:  John Deere Construction & Forestry Co. – Secured Lender Claim**. Class 3 consists of the Allowed Secured Claim of John Deere Construction & Forestry Co.

        **3.2.4. Class 4:  Ford Credit – Secured Lender**. Class 4 consists of the Allowed Secured Claim of Ford Credit.

        **3.2.5   Class 5: Don Ahern – Secured Lender.**  Class 5 consists of the Allowed Secured Claim of Don Ahern.

        **3.2.6  Class 6: Ally – Secured Lender.**  Class 6 consists of the Allowed Secured

Claim of Ally.

       **3.2.7    Class 7: Plaza Bank – Secured Lender.**  Class 7 consists of the Allowed Secured Claim of Plaza Bank.

        **3.2.8    Class 8: Zurich – Secured Lender.**  Class 8 consists of the Allowed Secured Claim of Zurich.

        **3.2.9    Class 9: Entrust – Secured Lender.**  Class 9 consists of the Allowed Secured Claim of Entrust.

        **3.2.10  Class 10: Valley Bank – Secured Lender.**  Class 10 consists of the Allowed Secured Claim of Valley Bank.

       **3.2.11  Class 11:  Mechanic's Lien Claimants – Joint Check Agreement Parties.**  Class 11 consists of the creditors who have mechanic lien rights and/or are parties to Joint Check Agreements with the Debtor and the Owners/Developers.

        **3.2.12 Class 12: General Unsecured Claims – Unsecured Non-Priority.**  Class 12 consists of the Allowed Unsecured Non-Priority Claims.

       **3.2.13  Class 13: Membership Interest – Equity Security Holder.**  Class 14 consists of all Allowed Equity Securities.

**4. DESIGNATION OF AND PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS UNDER THIS PLAN**

       **4.1. Class 1:  Nations Fund I, LLC - Secured Lender Claim.**  Class 1 consists of the Allowed Secured Lender Claim of Nations Fund I, LLC.  The Class 2 claimant shall retain its existing security interest in the Equipment listed in Exhibit "2" to the Disclosure Statement.  As of the petition date, the amount of the loan was $5,329,546.58.  The contractual interest for the loan was 12% per annum (non-default rate), and the maturity date of the loan was April 1, 2020.  Pursuant to the Ritchie Bros.' appraisal procured by Nations Fund's Nations Fund's contends that collateral was valued at approximately $5,645,400.00 as of February 4, 2015.  Debtor contends that the value of Nations Fund's collateral was considerably lower as of the petition date.

       Nations Fund contends that it is entitled to recovery of certain amounts pursuant to 11 USC §506 as an over-secured creditor.  Debtor disputes that Nations Fund was over-secured on the petition date. The parties will litigate this dispute so that the Court may determine the value of the Nations Fund's collateral as of the petition date, and the value of Nations Fund's claim.  Once that amount is determined, Debtor will pay Nations Fund the total value of Nations Fund's allowed claim under the terms provided herein.

       Additionally, contingent on Bankruptcy Court approval, Debtor will sell $1,535,000.00 of equipment, free and clear of all liens.  All sale proceeds shall be remitted to Nations Fund, which will be applied to decrease the Allowed Secured Claim (hereinafter "Remaining Allowed Secured Claim.)  The Remaining Allowed Secured Claim shall bear an interest rate of 6% per annum.  Debtor shall remit monthly periodic payments in the sum of $53,000.00 per month, which payments shall commence on the 15th day of the next month following the Effective Date.  Debtor will remit a balloon payment of the remaining balance 42 months following first periodic payment.  Debtor shall have the option of extending the balloon payment date for six additional months by remitting to Nations Fund an additional payment towards the principal balance in the sum of $250,000.00 at or before the maturity date.  The Allowed Secured Claim balance may be paid in full at any time prior to the maturity date without any prepayment penalty.  Interest will only accrue as to the

~~outstanding principal balance of the Allowed Secured Claim. Nations Fund shall receive first priority replacement liens on the equipment identified on Exhibit "1 to the Disclosure Statement, in the amounts identified on Exhibit "1," as may be amended or modified by Court Order. Debtor shall have the unfettered right to sell any of the equipment on Exhibit "1" provide that: (i) Nations Funds shall receive, at the close of each such sale, the value of the equipment being sold pursuant to the value delineated on Exhibit "1" (as may be amended or modified by Court Order); and (ii) in the event the equipment being sold procures a price in excess of the value delineated on Exhibit "1," (as may be amended or modified by Court Order) fifty percent (50%) of the excess proceeds shall also be paid to Nations Fund to pay down the remaining balance due on the Remaining Allowed Secured Claim. Nations Fund's replacement lien shall be deemed to be terminated as to the equipment sold pursuant to the terms set forth above, so long as the required payment is tendered to Nations Fund as required hereinabove.~~

The Class 2 claimant shall receive payment according to the terms of the Settlement, filed as Docket #450 in this case, the terms of which are incorporated herein. The Settlement calls for the Debtor to sell the Nations Fund Collateral and pay specified proceeds (either $5.1 if Debtor is unable to include certain Graders in the sale or $5.5 million dollars if the Graders are included) to Nations Fund. In addition, Debtor shall pay $40,000 to Nations Fund on the Effective Date. A motion to approve sale procedures is currently set for hearing on April 27, 2016. If the Graders are not included in the sale, Debtor will either deliver the Graders to Nations Fund or pay an additional $400,000 to Nations Fund. **Class 1 is** <u>not</u> **Impaired under this Plan.** The Holder of the Class 1 Claim is entitled to vote on this Plan.

**4.2. Class 2: Caterpillar Financial Services Corp. – Secured Lender Claim.** Class 2 consists of the Allowed Secured Lender Claim of Caterpillar Financial Services Corp. The Class 2 claimant shall retain its existing security interest in the Caterpillar Equipment, and its loan shall be modified as follows:

|  | Balance | Value | Interest Rate | Remaining Term | Monthly Payment |
|---|---|---|---|---|---|
| Spectra Laser CB 460 | $37,934.94 | $30,000.00 | 4.95 | 24 | 1,663.37 |
| Spectra Laser Kit | $15,189.39 | $10,000.00 | 4.95 | 24 | 666.02 |

The first payment shall be due on the fifteenth day following the first month after the Effective Date, unless otherwise agreed to between Debtor and Caterpillar Financial Services Corp. **Class 2 is Impaired under this Plan.** The Holder of Class 2 Claims is entitled to vote on this Plan.

**4.3. Class 3: John Deere Construction & Forestry Co. – Secured Lender Claim.** Class 3 consists of the Allowed Secured Claim of John Deere Construction & Forestry Co

The Class 3 claimant shall retain its existing security interest in the John Deere Equipment as follows:

| MAKE/MODEL | VIN |
|---|---|
| 310K EP Backhoe | 1T0310EKEDG245343 |
| 310K EP Backhoe | 1T0310EKVDG245319 |
| 310K EP Backhoe | 1T0310EKEEG266890 |

The current status of the loan is as follows:

| Account | Principal | Accrued Interest | Accrued Late Fees and Costs | Interest rate | Total |
|---|---|---|---|---|---|
| 0705 | $149,448.27 | $1,213.60 | $781.16 | 1.90% | $151,443.03 |

**Formatted:** Line spacing: single

**Formatted:** Line spacing: single

**Formatted:** Line spacing: single

| 5612 | $77,501.66 | $960.59 | $410.53 | 2.90% | $78,872.78 |
| TOTALS | $226,949.93 | $2,174.19 | $1,191.69 | | $230,315.81 |

The plan treatment shall be as follows:

1. The balance of Deere's claim related to Account 0705, on file herein as Claim 55-1, shall be modified to state a balance of $152,693.03.

2. The balance of Deere's claim related to Account 5612, on file herein as Claim 56-1, a balance of $80,122.78, and the "Months Remaining" shall be modified to state 69 months.

To the extent not inconsistent with this paragraph, the terms and conditions of the existing promissory note and security agreement shall remain in full force and effect. ~~. The current status of the loan is as follows:~~

| YEAR | MAKE/MODEL | VIN | BALANCE | VALUE | MONTHS REMAINING | INTEREST RATE | MONTHLY PAYMENT |
|---|---|---|---|---|---|---|---|
| | 310K EP Backhoe | 1T0310EKEDG245343 | $153,556.10 | $65,000.00 | 41 | 1.9 | $3,871.11 |
| | 310K EP Backhoe | 1T0310EKVDG245319 | see above | $65,000.00 | see above | see above | For both Pieces |
| | 310K EP Backhoe | 1T0310EKEEG266890 | $66,637.76 | $65,000.00 | 44 | 2.9 | $1,598.25 |

~~The loan shall be modified as follows:~~

| YEAR | MAKE/MODEL | VIN | BALANCE | VALUE | MONTHS REMAINING | INTEREST RATE | MONTHLY PAYMENT |
|---|---|---|---|---|---|---|---|
| | 310K EP Backhoe | 1T0310EKEDG245343 | $152,693.03 | 65,000.00 | 42.00 | 1.90 | $3,849.36 |
| | 310K EP Backhoe | 1T0310EKVDG245319 | see above | 65,000.00 | see above | see above | For both pieces |
| | 310K EP Backhoe | 1T0310EKEEG266890 | $80,122.78 | 65,000.00 | 69.00 | 2.90 | $1,262.09 |

~~To the extent not inconsistent with this paragraph, the terms and conditions of the existing promissory note and security agreement shall remain in full force and effect.~~ **Class 3 is Impaired under this Plan.** The Holder of the Class 3 Claim is entitled vote on this Plan.

**4.4. Ford Credit – Secured Lender.** Class 4 consists of the Allowed Secured Claim of Ford Credit. Class 4 consists of the Allowed Secured Claim of Ford Credit. The Class 4 claimant shall retain its existing security interest in the Ford Vehicles. The current status of the loan is as follows:

| MAKE/MODEL | VIN | Balance | Value | Months Remaining | Interest Rate | Monthly Payment |
|---|---|---|---|---|---|---|
| Ford F-150 | 1FTFW1EFOCFC12006 | 11,072.95 | 27,825.00 | 24 mo | 4.99% | $485.69 |
| Ford F-350 | 1FT8W3BT2EEA03938 | 35,136.76 | 41,150.00 | 51 mo | 1.90% | $929.74 |
| Ford F-150 | 1FTFW1ETXDKE23812 | 19,248.89 | 30,525.00 | 35 mo | 6.99% | $609.50 |
| Ford F-150 | 1FTFW1ET7DKE04683 | 24, 182.00 | 33,500.00 | 35 mo | 6.99% | $765.74 |

The loan shall be modified as follows:

| MAKE/MODEL | VIN | Balance | Value | Months Remaining | Interest Rate | Monthly Payment |
|---|---|---|---|---|---|---|
| Ford F-150 | 1FTFW1EFOCFC12006 | 11,072.95 | 27,825.00 | 36 mo | 3.50% | $324.43 |
| Ford F-350 | 1FT8W3BT2EEA03938 | 35,136.76 | 41,150.00 | 51 mo | 1.90% | $717.68 |
| Ford F-150 | 1FTFW1ETXDKE23812 | 19,248.89 | 30,525.00 | 50 mo | 4.50% | $422.90 |
| Ford F-150 | 1FTFW1ET7DKE04683 | 24, 182.00 | 33,500.00 | 50 mo | 4.50% | $531.30 |

To the extent not inconsistent with this paragraph, the terms and conditions of the existing promissory note and security agreement shall remain in full force and effect. **Class 4 is Impaired under this Plan.** Holders of Class 4 Claims are entitled to vote on this Plan.

17

**4.5    Class 5: Don Ahern – Secured Lender.**  Class 5 consists of the Allowed Secured Claim of Don Ahern.  The Class 5 claimant shall retain his existing security interest in the identified vehicles as set forth in Exhibit "45" to the Disclosure Statement. The current status of the loan is as follows:

| Loan | $150,000 |
|---|---|
| Interest | 10% |
| Remaining Months | 24 |
| Monthly Payment | $6,921.74 |

The loan shall be modified as follows:

| Loan | $150,000 |
|---|---|
| Interest | 4.50% |
| Remaining Months | 48 |
| Monthly Payment | $3,420.52 |

To the extent not inconsistent with this paragraph, the terms and conditions of the existing promissory note and security agreement shall remain in full force and effect.  **Class 5 is Impaired under this Plan.**  Holders of Class 5 Claims are entitled to vote on this Plan.

**4.6    Class 6: Ally – Secured Lender.**  Class 6 consists of the Allowed Secured Claim of Ally.  The Class 6 claimant shall retain its existing security interest in the Vehicle.  The Class 6 claimant shall retain its existing security interest in the Vehicle a 2015 Ford F-250SD VIN 1FTW2B61FEA22949.  The current status of the loan is as follows:

The account currently has a monthly payment amount of $697.99 with 57 payments remaining.  The current interest rate is 7.60%.

The account is in arrears in the sum of $1,420.98.  On the effective date of the Plan the arrears will be moved to the end of the loan and the interest rate will be reduced to 5%.  Debtor will continue to make monthly payments in the sum of $697.99 until paid in full.  To the extent not inconsistent with this paragraph, the terms and conditions of the existing promissory note and security agreement shall remain in full force and effect.  The current status of the loan is as follows:

| YEAR | MAKE/MODEL | VIN | Balance | Value | Months Remaining | Interest Rate | Monthly Payment |
|---|---|---|---|---|---|---|---|
| 2015 | Ford F-250SD | 1FTW2B61FEA22949 | $45,943.69 | $40,000 | 58 mo | 7.60% | $948.97 |

The loan shall be modified as follows:

| YEAR | MAKE/MODEL | VIN | Balance | Value | Months Remaining | Interest Rate | Monthly Payment |
|---|---|---|---|---|---|---|---|
| 2015 | Ford F-250SD | 1FTW2B61FEA22949 | $45,943.69 | $40,000 | 64 mo | 5.00% | $893.33 |

To the extent not inconsistent with this paragraph, the terms and conditions of the existing promissory note and security agreement shall remain in full force and effect.  **Class 6 is Impaired under this Plan.**  Holders of Class 6 Claims are entitled to vote on this Plan.

**4.7    Class 7: Plaza Bank – Secured Lender.**  The Class 7 claimant shall retain its existing security interests including those set forth in its loan documents and/or the Cash Collateral Stipulation [Dkt. #73]. The current amount of the loan is approximately $2,000,000.00,

18

Formatted: Line spacing:  single

Formatted: Indent: First line:  0.5"

Formatted: Indent: First line:  0", Space After: 0 pt

subject to increase for accrued interest, charges and costs (including legal fees) and subject to decrease to the extent principal payments are received pursuant to the Cash Collateral Stipulation (with the resulting amount due as of the Effective Date to be the new principal balance to be re-amortized pursuant to this Plan). The loan bears interest at the rate of Prime plus 2.25% (currently 5.5%) per annum, calculated pursuant to the terms of the Note in favor of Plaza Bank, with a maturity date of Oct. 1, 2024. This loan shall be modified only with respect to the amortization schedule, and shall be re-amortized and payments calculated based on a ten year amortization commencing on the Effective Date. Through the month in which the Effective Date falls, Debtor shall continue to make monthly payments pursuant to the terms of the Cash Collateral Stipulation. The loan will mature, and any unpaid balance shall be due and payable in full, on December 31, 2024. Debtor estimates that monthly payments will be approximately $21,170.59, and payments shall commence on the 15th day of the next month following the Effective Date (such that Debtor will not miss a monthly payment, with the amount of the payment to be calculated either pursuant to the Cash Collateral Stipulation or pursuant to the confirmed Plan). The loan balance may be paid in full at any time prior to the maturity date without any prepayment penalty. Interest will only accrue as to the outstanding re-amortized principal balance. Except with respect to the extended amortization and modifications provided herein, the terms and conditions of the existing promissory note, security agreement and other loan documents shall remain in full force and effect. Class 7 is Impaired under this Plan. Holders of Class 7 Claims are entitled to vote on the Plan.

      **4.8    Class 8: Zurich – Secured Lender.** Class 8 consists of the Allowed Secured Claim of Zurich. The Class 8 Creditor has a claim of approximately $4,860,530.67. It has a UCC-1 on certain real property as identified by its UCC financing statement filed with the Rhode Island Secretary of State. Creditor's junior security interest in the identified collateral shall be terminated and extinguished. Creditor will not receive any replacement liens. Creditor will be paid the value of its collateral (estimated at $497,132.03) in monthly payments over four (4) years, amortized over ten years with interest at 6% per annum, and a balloon payment due on the 48th month. The unsecured balance of the claim will be classified as an unsecured non-priority claim (Class 12). **Class 8 is Impaired under this Plan.** Holders of Class 8 Claims are entitled to vote on this Plan.

      **4.9    Class 9: Entrust – Secured Lender.** Class 9 consists of the Allowed Secured Claim, if any, of Entrust. The Class 8 Creditor has no Allowed Secured Claim because this creditor's junior security interest is not secured by any equity in any collateral, as the collateral is all over-encumbered. Entrust has a UCC-1 on the personal property identified in its UCC financing statement filed with the Rhode Island Secretary of State. Creditor's security interest in the identified collateral shall be terminated and extinguished, as Creditor is a junior lien holder and there is no equity in this creditor's collateral. Creditor will not receive any replacement liens. Creditor will be paid the value of its collateral (estimated at $0) in monthly payments over ten years with interest at 4% per annum. The unsecured balance of the claim, estimated at $500,000.00, will be classified as an unsecured non-priority claim (Class 12). **Class 9 is Impaired under this Plan**. Holders of Class 9 Claims are entitled to vote on this Plan.

      **4.10    Class 10: Valley Bank – Secured Lender.** Class 10 consists of the Allowed Secured Claim of Valley Bank. The Class 10 Creditor asserts a claim of approximately $400,000.00. It has a UCC-1 on the personal property identified in its UCC financing statement filed with the Nevada Secretary of State. Creditor's security interest in the identified collateral shall be terminated and extinguished and Creditor will not receive any replacement liens. The Allowed Secured Claim will be paid in monthly payments over ten years with interest of 4% per annum. The balance of the claim will be classified as an unsecured non-priority claim (Class 12). **Class 10 is Impaired under this Plan**. Holders of Class 10 Claims are entitled to vote on this Plan.

**4.11    Class 11: Mechanic's Lien Claimants – Joint Check Agreement Parties.** Class 11 consists of the parties who hold mechanic lien rights and/or are parties to Joint Check Agreements with the Debtor and the Owners/Developers.  Pursuant to these creditors' pre-petition mechanic's lien rights, and Joint Check Agreement rights, these creditors have been receiving and will continue to receive payments directly from the Owners/Developers of the projects for which these claimants provided materials and/or labor.  The remaining balances, if any, due to these Class 11 creditors will be classified as an unsecured non-priority claim (Class 12).  **Class 11 is Impaired under this Plan.**  Holders of Class 11 Claims are entitled to vote on this Plan.

**4.12    Class 12: General Unsecured Claims – Unsecured Non-Priority.**  Class 12 consists of the Allowed Unsecured Non-Priority Claims.  Unsecured Claims in Class  12,  shall receive ten percent (10%) of their Allowed Claims, which will be paid in four quarterly distributions commencing on the first day of the sixth month  after the Effective Date.  Payment of this Class will be funded by (1) $268,000.00 loaned/contributed by the Equity Member as "New Value" (which will be paid to this Class in lieu of repayment to Equity Member) plus (2) payments of not less than $70,000.00 per year for the next eight (8) to  ten (10) years (as needed until the claims of this Class are paid as required herein), with the first payment due on the first anniversary of the Effective Date.  **Class 12 is Impaired under this Plan**.  Holders of Class 12 Claims are entitled to vote on this Plan.

**4.14. Class 13: Equity Securities.**

In exchange for a New Value contribution consisting of a cash infusion on the Effective Date of no less than $232,000, as well as contribution of post-petition loans made to the Debtor in the approximate amount of $557,000 (the "Post-Petition Loans"), Equity Member  shall retain his membership interests in the Reorganized Debtor, but shall receive no distribution until the payment obligations to Classes 1 through 12 are satisfied in accordance with the Plan.  (Equity member may draw a salary as set forth in Section 10, below.)   Debtor did not seek or obtain court approval for the Post-Petition Loans.   The Equity Member contends that the Post-Petition Loans were appropriate pursuant to 11 U.S.C. §364(a), and that the moneys loaned were necessary and required for Debtor, and reflected the types of loans commonly made by owners to their wholly-owned businesses to cover cash flow shortages.  The funds were used to pay the necessary obligations of Debtor, post petition, including, but not limited to, to remit wages to its employees, and to pay insurance premiums to ensure that insurance did not lapse, so that Debtor could continue operations. Accordingly, Equity Member asserts that the Post-Petition Loanentitiled to administrative priority treatment pursuant to 11 U.S.C. §503(b)(1).

~~On the Effective Date, the Holders of Equity Securities of Debtor shall retain all of their legal interests.  Holders in Class 13 are Unimpaired, are deemed to have accepted this Plan, and are not entitled to vote on this Plan.~~

**5. MEANS FOR IMPLEMENTATION OF PLAN**

**5.1. Reorganized Debtor**.  On the Effective Date, without any further action by Debtor or Reorganized Debtor, all of Debtor's assets shall vest in Reorganized Debtor and Reorganized Debtor shall continue to exist as a separate entity in accordance with applicable law. Debtor's existing articles of organization, by-laws, and operating agreements (as amended, supplemented, or modified) will continue in effect for Reorganized Debtor following the Effective Date, except to the extent that such documents are amended in conformance with this Plan or by proper corporate action after the Effective Date.

Formatted: Line spacing:  single

**5.2. Post-Effective Date Management of Reorganized Debtor**.  From and after the Effective Date, in accordance with Debtor's operating agreement, as amended, Reorganized Debtor will continue to be managed by Debtor's pre-petition manager and the Executive Committee, which management may subsequently be modified to the extent provided by Reorganized Debtor's articles of organization, by-laws, and operating agreement (as amended, supplemented, or modified).

**5.6. Notice of Effectiveness**.  When all of the steps contemplated by Section 8.2 have been completed or waived, Reorganized Debtor shall file with the Bankruptcy Court and serve upon all Creditors and all potential Holders of Administrative Claims known to Reorganized Debtor (whether or not disputed), a notice of Effective Date of Plan.  The notice of Effective Date of Plan shall include notice of the Administrative Claim Bar Date.

**5.7. No Governance Action Required**.  As of the Effective Date: (i) the adoption, execution, delivery, and implementation or assignment of all contracts, leases, instruments, releases, and other agreements related to or contemplated by this Plan; and (ii) the other matters provided for under or in furtherance of this Plan involving corporate action to be taken by or required of Debtor shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without further order of the Bankruptcy Court or any requirement of further action by the members or managers of Debtor.

**6. EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**6.1. Executory Contracts**.  Debtor will assume the following leases:

a.  Caserta, LLC-  property lease for 4820 E. La Mancha, Las Vegas, NV 89115 (storage yard):
  i.    Balance Due:  $155,000.00
  ii.   Monthly Payment:  $6,500.00
  iii.  Remaining Term:  12 months
  iv.   Arrears:  $77,000.00 (to be paid in 60 equal monthly installments)

As disclosed herein above, Caserta LLC is owned by David Rocchio Sr.  The lease agreement between Debtor and Caserta LLC is for an amount equal to or below fair market value, and Debtor's lease payment is not proportionately more than the other two tenants renting the remainder of the property.

b.  Wigwam 1020 LLC – property lease for 1020 Wigwam Parkway, Henderson NV 89074-0000 (office);
  i.    Balance Due:  $120,000.00
  ii.   Monthly Payment:  $8,000.00
  iii.  Remaining Term:  12 months
  iv.   Arrears:  $24,000.00 (to be paid in 60 equal monthly installments)

As disclosed herein above, Wigwam 1020 LLC is owned by David Rocchio Sr.  The lease agreement between Debtor and Wigwam 1020 LLC is for an amount equal to or below fair market value.

c.  Excavators and Loaders (Combined Single) Lease for the following pieces of equipment:
    336EL Caterpillar Hydraulic Excavator, Serial No. BZY00226
    336EL Caterpillar Hydraulic Excavator, Serial No. BZY00232

**Formatted:** Indent: Left:  0.5", Hanging:  1", No bullets or numbering

21

336EL Caterpillar Hydraulic Excavator, Serial No. BZY00189
336EL Caterpillar Hydraulic Excavator, Serial No. ZY00291
950K Caterpillar Wheel Loader, Serial No. R4A01189
    i.   Balance Due:     $942,040.19
    ii.  Monthly Payment:   $ 22,791.41
    iii. Remaining Term:    33 months
    iv. Arrears:       $126,615.76 (to be paid in 24 equal
                      monthly installments)

Debtor will assume the following leases to the extent they are true leases and not previously paid by Nations Fund:

       ~~c.~~   a.   Caterpillar Financial Services Corporation equipment leases for:

          ~~1.~~2.   160M Caterpillar Moto Grader, Serial No. D9T00117
              i.      Balance Due:     $193,443.73
              ii.     Monthly Payment:   $4,905.96
              iii.    Remaining Term:   18 months
              iv.     Arrears:       $27,960.20  (to be paid in 12 equal
                                monthly installments)

          ~~2.~~3.   b.   14M Motor Grader, Serial No. B9J00823
              i.      Balance Due:     $234,817.21
               ii.     Monthly Payment:   $4,406.37
               iii.    Remaining Term:   18 months
               iv.     Arrears:       $43,751.01 (to be paid in 12 equal
                                monthly installments)

~~3.   Excavators and Loaders (Combined Single) Lease for the following pieces of equipment:~~
~~336EL Caterpillar Hydraulic Excavator, Serial No. BZY00226~~
~~336EL Caterpillar Hydraulic Excavator, Serial No. BZY00232~~
~~336EL Caterpillar Hydraulic Excavator, Serial No. BZY00189~~
~~336EL Caterpillar Hydraulic Excavator, Serial No. ZY00291~~
~~950K Caterpillar Wheel Loader, Serial No. R4A01189~~
~~i.   Balance Due:     $942,040.19~~
~~ii.  Monthly Payment:   $ 22,791.41~~
~~iii. Remaining Term:   33 months~~
~~iv. Arrears:       $126,615.76 (to be paid in 24 equal monthly installments)~~

Debtor will assume all pre-petition executory Joint-Check Agreements between Debtor, Owner/Developer, and third party subcontractors and material suppliers, as well as all executory construction contracts, as identified in Schedule G, as may be amended by Debtor.

      **6.2. Approval of Assumption or Rejection**.  Entry of the Confirmation Order shall constitute as of the Effective Date: (i) approval, pursuant to Bankruptcy Code Section 365(a), of the assumption by Reorganized Debtor of each Executory Contract and Unexpired Lease to which Debtor is a party and is accepted as set forth in the Disclosure Statement; and (ii) rejection by Debtor of each Executory Contract and Unexpired Lease to which Debtor is a party that not expressly assumed as set forth in the Disclosure Statement.  Upon the Effective Date, each counter party to an assumed Executory Contract or Unexpired Lease listed shall be deemed to have

22

consented to an assumption contemplated by Section 365(c)(1)(B) of the Bankruptcy Code, to the extent such consent is necessary for such assumption. To the extent applicable, all Executory Contracts or Unexpired Leases of Reorganized Debtor assumed pursuant to Plan shall be deemed modified such that the transactions contemplated by this Plan shall not be a "change of control," regardless of how such term may be defined in the relevant Executory Contract or Unexpired Lease and any required consent under any such Executory Contract or Unexpired Lease shall be deemed satisfied by confirmation of this Plan.

**6.3. Cure of Defaults**. Reorganized Debtor shall Cure any defaults respecting each Executory Contract or Unexpired Lease assumed pursuant to the cure provisions set forth in the Disclosure Statement.

**6.4. Objection to Cure Amounts**. Any party to an Executory Contract or Unexpired Lease who objects to the Cure amount determined by Debtor to be due and owing must file and serve an objection on Debtor's counsel no later than thirty (30) days after the Effective Date. Failure to file and serve a timely objection shall be deemed consent to the Cure amounts paid by Debtor in accordance with this Plan. If there is a dispute regarding: (i) the amount of any Cure payment; (ii) the ability of Reorganized Debtor to provide "adequate assurance of future performance" under the Executory Contract or Unexpired Lease to be assumed or assigned; or (iii) any other matter pertaining to assumption, the Cure payments required by Section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order resolving the dispute and approving the assumption.

**6.5. Confirmation Order**. The Confirmation Order will constitute an order of the Bankruptcy Court approving the assumptions described in this Plan pursuant to Section 365 of the Bankruptcy Code as of the Effective Date. Notwithstanding the forgoing, if, as of the date the Bankruptcy Court enters the Confirmation Order, there is pending before the Bankruptcy Court a dispute concerning the cure amount or adequate assurance for any particular Executory Contract or Unexpired Lease, the assumption of such Executory Contract or Unexpired Lease shall be effective as of the date the Bankruptcy Court enters an order resolving any such dispute and authorizing assumption by Debtor.

**6.6. Post-Petition Date Contracts and Leases**. Executory Contracts and Unexpired Leases entered into and other obligations incurred after the Petition Date by Reorganized Debtor shall be assumed by Debtor on the Effective Date. Each such Executory Contract and Unexpired Lease shall be performed by Reorganized Debtor in the ordinary course of its business.

**6.7. Bar Date**. All proofs of Claims with respect to Claims arising from the rejection of any Executory Contract or Unexpired Lease shall be filed no later than thirty (30) calendar days after the Effective Date. Any Claim not filed within such time shall be forever barred.

**7. MANNER OF DISTRIBUTION OF PROPERTY UNDER THIS PLAN**

**7.1. Distributions**. Reorganized Debtor shall be responsible for making the Distributions described in this Plan. Reorganized Debtor may make such Distributions before the allowance of each Claim and Equity Securities has been resolved. Except as otherwise provided in this Plan or the Confirmation Order, the Cash necessary for Reorganized Debtor to make payments pursuant to this Plan may be obtained from existing Cash balances and Debtor's operations.

**7.2. Statements**. Reorganized Debtor shall maintain a record of the names and addresses of all Holders of Allowed Claims as of the Effective Date and all Holders as of the Record Date of Equity Securities of Debtor for purposes of mailing Distributions to them. Reorganized

23

Debtor may rely on the name and address set forth in Debtor's Schedules and/or proofs of Claim and the ledger and records regarding Holders of Equity Securities as of the Record Date as being true and correct unless and until notified in writing. Reorganized Debtor shall file all tax returns and other filings with governmental authorities on behalf of Reorganized Debtor and the assets it holds.

**7.3. Further Authorization**. Debtor and Reorganized Debtor shall be entitled to seek such orders, judgments, injunctions, and rulings as it deems necessary to carry out the intentions and purposes, and to give full effect to the provisions of this Plan.

## 8. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

**8.1. Conditions to Confirmation**. The Confirmation Order shall have been entered and be in form and substance acceptable in all respects to Debtor.

**8.2. Conditions to Effectiveness**. The following are conditions precedent to the occurrence of the Effective Date:

**8.2.1.** The Confirmation Order shall be a Final Order, except that Debtor reserves the right to cause the Effective Date to occur notwithstanding the pendency of an appeal of the Confirmation Order, under circumstances that would moot such appeal;

**8.2.2.** No request for revocation of the Confirmation Order under Section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending, including any appeal; and

**8.2.3.** All documents necessary to implement the transactions contemplated by this Plan shall be in form and substance acceptable to Debtor.

**8.2.4.** Reorganized Debtor shall have sufficient funds to tender the Effective Date payments due under this Plan.

**8.3. Waiver of Conditions**. Debtor may waive any and all of the other conditions set forth in this Plan and specifically Sections 8.1 and 8.2 above without leave of or order of the Bankruptcy Court and without any formal action.

## 9. TITLE TO PROPERTY; DISCHARGE; INJUNCTION

**9.1. Vesting of Assets**. Subject to the provisions of this Plan and as permitted by Section 1123(a)(5)(B) of the Bankruptcy Code, the Assets, including the Litigation Claims and right, title, and interest being assumed by Reorganized Debtor in the assumed Executory Contracts, shall be transferred to Reorganized Debtor on the Effective Date. As of the Effective Date, all such property shall be free and clear of all Liens, Claims, and Equity Securities except for the Liens and Claims of Secured Lender and as otherwise provided herein. On and after the Effective Date, Reorganized Debtor may operate its business and may use, acquire, and dispose of property and compromise or settle any Claim without the supervision of or approval of the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by this Plan or the Confirmation Order.

**9.2. Preservation of Litigation Claims**. In accordance with Section 1123(b)(3) of the Bankruptcy Code, and except as otherwise expressly provided herein, all Litigation Claims shall be assigned and transferred to Reorganized Debtor. Reorganized Debtor, as the successor in interest

to Debtor and the Estate, may and shall have the exclusive right to sue on, settle, or compromise any and all Litigation Claims, including derivative actions existing against Debtor on the Effective Date.

**9.3. Discharge**.  On the Effective Date, unless otherwise expressly provided in this Plan or the Confirmation Order, Debtor shall be discharged from any and all Claims to the fullest extent provided in the Bankruptcy Code, including Sections 524 and 1141.  All consideration distributed under this Plan or the Confirmation Order shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of all Claims of any kind or nature whatsoever against Debtor or any of its Assets or properties, and regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims.  Except as otherwise expressly provided by this Plan and the Confirmation Order, upon the Effective Date, Debtor shall be deemed discharged and released under and to the fullest extent provided under Section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

**9.4. Injunction**.  From and after the Effective Date, and except as provided in this Plan and the Confirmation Order, all entities that have held, currently hold, or may hold a Claim or Equity Security or other right of an Equity Security Holder that is terminated pursuant to the terms of this Plan are permanently enjoined from taking any of the following actions on account of any such Claims or terminated Equity Securities or rights: (i) commencing or continuing in any manner any action or other proceeding against Reorganized Debtor or its property; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against Reorganized Debtor or its property; (iii) creating, perfecting, or enforcing any Lien or encumbrance against Reorganized Debtor or its property; (iv) asserting a  right of subrogation of any kind against any debt, liability, or obligation due to Reorganized Debtor or its property; and (v) commencing or continuing any action, in any manner or any place, that does not comply with or is inconsistent with the provisions of this Plan or the Bankruptcy Code.

**9.5. Exculpation**.  From and after the Effective Date, neither Debtor, Reorganized Debtor, their respective professionals, nor any of their respective present or former members, directors, officers, managers, employees, advisors, attorneys, or agents, shall have or incur any liability, including derivative claims, but excluding direct claims, to any Holder of a Claim or Equity Security or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of (from the Petition Date forward), the Chapter 11 Case, the pursuit of confirmation of this Plan, or the substantial consummation of this Plan, except for gross negligence and willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan or in the context of the Chapter 11 Case.

**10. RETENTION OF JURISDICTION**

**10.1. Jurisdiction**.  Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Case and Reorganized Debtor after the Effective Date as is legally permissible, including jurisdiction to:

**10.1.1.**  Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Equity Securities or Disputed Claim or Disputed Equity Securities, including the resolution of any request for payment of any

25

Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Disputed Claims and Equity Securities or Disputed Equities Securities;

**10.1.2**. Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan for periods ending on or before the Effective Date;

**10.1.3**. Resolve any matters related to the assumption, assignment, or rejection of any Executory Contract or Unexpired Lease to which Debtor or Reorganized Debtor are party and to hear, determine, and, if necessary, liquidate any Claims arising therefrom or Cure amounts related thereto;

**10.1.4**. Insure that distributions to Holders of Allowed Claims and Equities Securities are accomplished pursuant to the provisions of this Plan;

**10.1.5**. Decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications or motions involving Debtor or Reorganized Debtor that may be pending on the Effective Date or commenced thereafter as provided for by this Plan;

**10.1.6**. Enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan or the Disclosure Statement or the Confirmation Order, except as otherwise provided herein;

**10.1.7**. Decide or resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of any Final Order, this Plan, the Confirmation Order, or any Person's obligations incurred in connection with this Plan or the Confirmation Order;

**10.1.8**. Modify this Plan pursuant to Section 1127 of the Bankruptcy Code and Section 11.1 of this Plan or modify any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order or the Reorganized Debtor; or remedy any defect or omission or reconcile any inconsistency in any Final Order, this Plan, the Confirmation Order, or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan, to the extent authorized by the Bankruptcy Code;

**10.1.9**. Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any person with consummation, implementation, or enforcement of any Final Order, this Plan, or the Confirmation Order, except as otherwise provided herein;

**10.1.10**. Enter and implement such orders as are necessary or appropriate if a Final Order or the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

**10.1.11**. Determine any other matters that may arise in connection with or relate to this Plan, any Final Order, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, any Final Order, or Confirmation Order, except as otherwise provided herein;

**10.1.12**. Enter an order closing the Chapter 11 Case;

26

**10.1.13**.  Hear and decide Litigation Claims and continue to hear and decide pending Litigation Claims and any other claim or cause of action of Debtor and Reorganized Debtor; and

**10.1.14**.  Decide or resolve any matter over which the Bankruptcy Court has jurisdiction pursuant to Section 505 of the Bankruptcy Code.

## 11. MODIFICATION AND AMENDMENT OF PLAN

**11.1.  Modification and Amendment**.  Prior to Confirmation, Debtor may alter, amend, or modify this Plan under Section 1127(a) of the Bankruptcy Code at any time.  After the Confirmation Date and prior to substantial consummation of this Plan as defined in Section 1101(2) of the Bankruptcy Code, Debtor may, under Section 1127(b), (c), and (d) of the Bankruptcy Code, alter, amend, or modify this Plan or institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, to make appropriate adjustments and modifications to this Plan or the Confirmation Order as may be necessary to carry out the purposes and effects of this Plan so long as such proceedings do not materially adversely affect the treatment of Holders of Claims under this Plan.

## 12. MISCELLANEOUS

**12.1.  Filing of Objections to Claims or Equity Securities**.  After the Effective Date, objections to Claims or Equity Securities shall be made and objections to Claims and Equity Securities made previous thereto shall be pursued by Reorganized Debtor or any other party properly entitled to do so after notice to Reorganized Debtor and approval by the Bankruptcy Court. Any objections to Claims made after the Effective Date shall be filed and served not later than the first Business Day that is sixty (60) calendar days after the Effective Date; provided, however, that such period may be extended by order of the Bankruptcy Court.

**12.1.1.  Resolution of Objections After Effective Date**.  From and after the Effective Date, Reorganized Debtor may litigate to judgment, propose settlements of, or withdraw objections to, all pending or filed Disputed Claims and Disputed Equity Securities and may settle or compromise any Disputed Claim or Disputed Equity Security without notice and a hearing and without approval of the Bankruptcy Court.

**12.1.2.  Distributions**. Upon Final Order with respect to a Disputed Claim or Disputed Equity Security, the Holder of such Disputed Claim or Disputed Equity Security, to the extent it has been determined to be an Allowed Claim or Allowed Equity Security, shall receive on the next Quarterly Distribution Date from the Reorganized Debtor that payment or Distribution to which it would have been entitled if the portion of the Claim or Equity Security so allowed had been allowed as of the Effective Date.

**12.1.3.  Late-Filed Claims.**  No Claim filed after the Bar Date or, as applicable, the Administrative Claim Bar Date, shall be allowed, and all such Claims are hereby disallowed in full. After the Bar Date or the Administrative Bar Date, as applicable, no Creditor shall be permitted to amend any claim to increase the claimed amount and any such amendment shall be disallowed to the extent of the late-filed increase in the claimed amount.

**12.2.  Effectuating Documents**. Further Transactions; Timing.  Debtor and Reorganized Debtor are each authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and

27

any securities issued, transferred, or canceled pursuant to this Plan.  All transactions that are required to occur on the Effective Date under the terms of this Plan shall be deemed to have occurred simultaneously.  Debtor and Reorganized Debtor are authorized and directed to do such acts and execute such documents as are necessary to implement this Plan.

**12.3.  Exemption from Transfer Taxes**.  Pursuant to Section 1146 of the Bankruptcy Code: (i) the issuance, distribution, transfer, or exchange of Estate property; (ii) the creation, modification, consolidation, or recording of any deed of trust or other security interest, the securing of additional indebtedness by such means or by other means in furtherance of, or connection with this Plan or the Confirmation Order; (iii) the making, assignment, modification, or recording of any lease or sublease; or (iv) the making, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, the Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to the foregoing shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act or real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment and the appropriate state or local government officials or agents shall be, and hereby are, directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**12.4.  Revocation or Withdrawal of this Plan**.  Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Confirmation Date.  If this Plan is withdrawn or revoked, then this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against Debtor or any other Person nor shall the withdrawal or revocation of this Plan prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving Debtor.  In the event this Plan is withdrawn or revoked, nothing set forth herein shall be deemed an admission of any sort and this Plan and any transaction contemplated thereby shall be inadmissible into evidence in any proceeding.

**12.5.  Binding Effect**.  This Plan shall be binding upon, and shall inure to the benefit of, Debtor, Reorganized Debtor, and the Holders of all Claims and Equity Securities and their respective successors and assigns.

**12.6.  Governing Law**.  Except to the extent that the Bankruptcy Code or other federal law is applicable or as provided in any contract, instrument, release, or other agreement entered into in connection with this Plan or in any document which remains unaltered by this Plan, the rights, duties, and obligations of Debtor, Reorganized Debtor, and any other Person arising under this Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Nevada without giving effect to Nevada's choice of law provisions.

**12.7.  Modification of Payment Terms**.  Reorganized Debtor reserves the right to modify the treatment of any Allowed Claim or Allowed Equity Security in any manner adverse only to the Holder of such Allowed Claim or Allowed Equity Security at any time after the Effective Date upon the prior written consent of the Holder whose Allowed Claim or Allowed Equity Security treatment is being adversely affected.

**12.8. Providing for Claims Payments**.  Distributions to Holders of Allowed Claims shall be made by Reorganized Debtor: (i) at the addresses set forth on the proofs of Claim filed by such Holders (or at the last known addresses of such Holders if no proof of Claim is filed or if Debtor has been notified of a change of address); (ii) at the addresses set forth in any written notices of address changes delivered to Reorganized Debtor after the date of any related proof of Claim; or

(iii) at the addresses reflected in the Schedules if no proof of Claim has been filed and Reorganized Debtor has not received a written notice of a change of address.  Distributions to Holders of Allowed Equity Securities shall be made to the Holder of such Allowed Equity Security as of the Record Date.  If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until Reorganized Debtor is notified of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder without interest.  Amounts in respect of undeliverable Distributions made through Reorganized Debtor shall be returned to Reorganized Debtor until such Distributions are claimed.  All claims for undeliverable Distributions shall be made on or before the first anniversary of the Effective Date. After such date, all unclaimed property shall revert to Reorganized Debtor and the Claim of any Holder or successor to such Holder with respect to such property shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary.  Nothing contained in this Plan shall require Debtor or Reorganized Debtor to attempt to locate any Holder of an Allowed Claim or Allowed Equity Security.

**12.9**.  **Set Offs**.  Except for the Claims of Secured Lender, Debtor and Reorganized Debtor may, but shall not be required to, set off or recoup against any Claim or Equity Security and the payments or other distributions to be made pursuant to this Plan in respect of such Claim or Equity Security (before any distribution is made on account of such Claim or Equity Security), claims of any nature whatsoever that the applicable Debtor or Reorganized Debtor may have against the Holder of such Claim or Equity Security to the extent such Claims or Equity Securities  may be set off or recouped under applicable law, but neither the failure to do so nor the allowance of any Claim or Equity Security hereunder shall constitute a waiver or release by Debtor or Reorganized Debtor of any such Claim that it may have against such Holder.

**12.10**. **Notices**.  Any notice required or permitted to be provided under this Plan shall be in writing and served by either: (i) certified mail, return receipt requested, postage prepaid; (ii) hand delivery; or (iii) reputable overnight courier service, freight prepaid, to be addressed as follows:

If to Debtor Capriati Construction Corp., Inc.:

KUNG & BROWN
Att: AJ Kung/Brandy Brown
214 S. Maryland Pkwy
Las Vegas, NV  89101
Fax:  (702) 382-0882
E-Mail:  ajkung@ajkunglaw.com
E-Mail:  bbrown@ajkunglaw.com

**12.11. Severability**. If any provision of this Plan is determined by the Bankruptcy Court to be invalid, illegal, or unenforceable or this Plan is determined to be not confirmable pursuant to Section 1129 of the Bankruptcy Code, the Bankruptcy Court, at the request of Debtor

29

shall have the power to alter and interpret such term to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**12.12. Withholding and Reporting Requirements**. In connection with this Plan and all instruments and securities issued in connection therewith and Distributions thereon, Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements. Reorganized Debtor shall be authorized to take any and all action that may be necessary to comply with such withholding and recording requirements. Notwithstanding any other provision of this Plan, each Holder of an Allowed Claim or Allowed Equity Security that has received a distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding, and other tax obligation on account of such distribution.

**12.13. Post-Confirmation Reporting**. Until the entry of the final decree closing the Chapter 11 Case, Reorganized Debtor shall comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rule's post-confirmation reporting requirements. Additionally, to the extent required, Reorganized Debtor shall file post-confirmation quarterly operating reports in accordance with the United States Trustee Guidelines.

**12.14. Cramdown**. In the event that any Impaired Class is determined to have rejected this Plan in accordance with Section 1126 of the Bankruptcy Code, Debtor may invoke the provisions of Section 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of this Plan. Debtor reserves the right to modify this Plan to the extent, if any, that Confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

**12.15.** Quarterly Fees to the United States Trustee. Prior to the Effective Date, Debtor, and after the Effective Date, Reorganized Debtor, shall pay all quarterly fees payable to the Office of the United States Trustee consistent with the sliding scale set forth in 28 U.S.C. § 1930(a)(6), and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

DATED this __10th day of ~~March~~_____, 2016.

KUNG & BROWN

By: __/s/ A.J. Kung_____

A.J. Kung, Esq.

30

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Nevada Bar No. 7052
Brandy Brown, Esq.
Nevada Bar No. 9987
214 S. Maryland Parkway
Las Vegas, Nevada 89101
Phone: (702)382-0883
Fax:    (702)382-2720
        *Attorneys for Debtor*