A.J. Kung, Esq.
Nevada Bar No. 7052
Brandy Brown, Esq.
Nevada Bar No. 9987
KUNG & BROWN
214 S. Maryland Parkway
Las Vegas, Nevada 89101
(702) 382-0883
(702) 382-2720 Fax
ajkung@ajkunglaw.com
bbrown@ajkunglaw.com
*Attorneys for Debtor*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>CAPRIATI CONSTRUCTION CORP., INC.<br><br>Debtor. | Case No.  BK-15-15722-abl<br><br>Chapter 11<br><br><u>**HEARING DATE: MAY 8, 2017**</u><br><br><u>**HEARING TIME: 1:30 PM**</u> |

<u>**MOTION FOR CONTEMPT OF COURT; AND FOR SANCTIONS AND ATTORNEY'S FEES FOR CREDITOR SPER INC.'S WILLFUL VIOLATION OF: (1) THE PLAN INJUNCTION/DISCHARGE PURSUANT TO 11 U.S.C. §524 AND §1141; AND (2) THE AUTOMATIC STAY PURSUANT TO 11 U.S.C §362.**</u>

Capriati Construction Corp., Inc., the above-captioned Reorganized Debtor ("Capriati"), by and through its attorneys, the law firm of Kung & Brown hereby files this Motion For Contempt and for Sanctions and Attorney's Fees For Creditor, SPER Inc.'s Willful Violation of: (1) the Plan Injunction Pursuant To 11 U.S.C. §524 and §1141; and (2) the Automatic Stay Pursuant To 11 U.S.C §362 ("Motion").  Capriati respectfully requests that this Court award sanctions and attorney's fees to Capriati, and against SPER Inc.

-1-

("SPER"), for SPER's willful and continued violations of the Automatic Stay and the Plan Injunction/Discharge. In support of the Motion, the Capriati submits the following Memorandum of Points & Authorities, the exhibits attached hereto, and the papers and pleadings on file in this bankruptcy case, of which Capriati respectfully requests that the Court take judicial notice pursuant to Fed. R. Evid. 201.

## JURISDICTION AND VENUE

This Court has jurisdiction to consider the matter pursuant to 28 U.S.C. §§ 157 and 1334.

This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## PROCEDURAL AND FACTURAL BACKGROUND

### The Bankruptcy Action

1.      On October 7, 2015, this case was commenced by Capriati's filing of a voluntary petition seeking relief under Chapter 11 of the United States Bankruptcy Code ("Code").

2.      Capriati listed in its schedules, the disputed debt owed to Susan Frankewich, Esq./SPER in the sum of $110,381.42 [Dkt. No. 44].

3.      On December 10, 2015, SPER filed its proof of claim in the sum of $109,459.50 [POC 28].

-2-

4.      SPER is owned and operated by Susan Frankewich, Esq. ("Frankewich"), who was counsel to Capriati from approximately 2003 – mid 2015.

5.      Upon information and belief, SPER is the entity through which Frankewich provides legal services.

6.      SPER is represented by Frankewich in these proceedings.

7.      In support of SPER's proof of claim, SPER submitted 106 pages of billing statements from "Susan Frankewich" to "Capriati Construction" [POC 28-1].

8.      SPER did not file any Objection to Capriati's Discharge or challenge the dischargeability of the SPER debt, though SPER did file multiple objections to Capriati's Disclosure Statement (and amendments thereto) and Plan (and amendments thereto) [Dkt. Nos. 254, 259, 398, 527,  573, and 621].

9.      Additionally, it was alleged by Capriati, that SPER/Frankewich behaved improprietiously and improperly during these bankruptcy proceedings by inappropriately soliciting votes against Capriati's proposed Plan under the guise that Susan Frankewich, Esq. ("Frankewich") was *present* counsel for Capriati.  [*See*, Capriati Motion to Designate Vote, Dkt. No. 576; Declarations of Michele D'Orsi (Patriot Enterprises, Inc.), David Rocchio Jr, Debbie Schneiderwind (Nevada Transit & Laser),  and Jacque Thornton (Zomax, Inc.) in support of Motion to Designate Dkt. Nos. 604, 606, 694, and 695.]

10.     At trial for confirmation, SPER was the sole objecting creditor to Confirmation.

11.     During the two day trial, SPER was provided ample opportunity to present her evidence to support her objections and allegations of fraudulent transfers and avoidance actions.

12.     Notably, at the time of trial, SPER produced no witnesses, and only admitted one evidentiary document, which was the expert report rendered by William Leonard in support of confirmation.

13.     After considering all evidence presented, and due deliberation, on December 5, 2016, the Court confirmed Debtor's Third Amended Plan of Reorganization.  [Dkt. No. 813].

14.     Pursuant to 11 U.S.C. §1141(d)(1)(A), Capriati received its Discharge upon Plan confirmation.

15.     Pursuant to 11 U.S.C. §1141(b) and Section 9.3 of the Confirmed Plan [Dkt. Nos. 485 and 813] all of the property of the bankruptcy estate vested in Capriati upon Confirmation.

**SPER's State Court Actions in Violation of the Automatic Stay and Plan Injunction.**

16.     Throughout the pendency of Capriati's bankruptcy, SPER sought collection upon its debt (owed by Capriati) from Capriati's principal, David Rocchio Sr. ("Rocchio") under the dependent and "derivative" liability theories of:

    a. Fraudulent Conveyance (See, SPER Second Amended Complaint, attached

        hereto as Exhibit "1".)

-4-

b. Unjust Enrichment

c. Promissory Estoppel

d. Tortious Breach of The Implied Covenant of Good Faith and Fair Dealing

17.    In so doing, SPER filed the following pertinent pleadings in State Court[1]:

a.    Complaint (October 14, 2015)

b.    Amended Complaint (February 17, 2016)

c. Second Amended Complaint (September 1, 2016)

d. Amended Complaint (March 9, 2017)

18.    SPER has acknowledged that the debt was <u>not</u> personally guaranteed by Rocchio, yet SPER continues to seek recovery from Rocchio derivately under inapplicable theories of recovery, including Fraudulent Transfer and Alter Ego.

19.    It is well-established under applicable law that Fraudulent Transfer claims and Alter Ego claims are property of the bankruptcy estate pursuant to 11 U.S.C. §541.

20.    Pursuant to 11 U.S.C. §1141(b) and Section 9.3 of the Confirmed Plan [Dkt. Nos. 485 and 813] all of the property of the bankruptcy estate vested in Capriati upon Confirmation.

---

[1] See, State Court Register of Action attached hereto as Exhibit "2."

-5-

21.     Therefore, SPER is improperly usurping Capriati's property, and has violated the Automatic Stay (§362) and continues to violate the Plan Injunction (§524 and §1141) by seeking to recover on a pre-petition debt that was discharged upon confirmation of Capriati's Plan of Reorganization.

22.     SPER's vexatious actions have caused significant harm to Capriati and Rocchio, and as such, Capriati respectfully requests that this Court issue appropriate sanctions against SPER for SPER's willful violations. Capriati should also be awarded appropriate attorney's fees and costs.

## RELIEF REQUESTED

23.     By this Motion, Capriati respectfully requests that this Court issue an Order of Contempt as to SPER and Frankewich; and an Order for Sanctions and Attorney's Fees under 11 U.S.C. §524(a)(2), §105(a), §362(a)(2),(3) and (4), §1327(c), Bankruptcy Rule 9020, and 28 U.S.C. § 1927.

## LEGAL ARGUMENT

**A.     This Court Has Jurisdiction to Render the Relief Requested.**

Bankruptcy courts have original and exclusive jurisdiction over all cases under Title 11 and original, but not exclusive jurisdiction over all civil proceedings arising under Title 11, or arising in or related to cases under 28 U.S.C. §1334(a) and (b).   This jurisdiction encompasses "all matters connected with the bankruptcy estate."  *In re Birting Fisheries, Inc.,* 300 B.R. 489, 498-99 (9th Cir. BAP 2003).

Moreover, matters "connected with" the bankruptcy estate are considered "core proceedings," arising under Title 11, within the purview of the bankruptcy courts' jurisdiction. *Stern v. Marshall*, 131 S.Ct. 2594, 2603 (2011), *In re Ray*, 624 F.3d 1124, 1131 (9th Cir. 2010), and 28 U.S.C. §157(b)(1).  Finally, it is long since well-established that the Court inherently has the power to enforce its own orders, including the Confirmation and Discharge Orders under 11 U.S.C. §105(a).  *See also, Travelers Indem. Co. v. Bailey*, 129 S.Ct. 2195, 2205, 174 L.Ed.2d 99 (2009) ("A bankruptcy court plainly has jurisdiction to interpret and enforce its own prior order."); *In re Birting, supra* at 499 (holding that a bankruptcy court's core jurisdiction continues in order for it to enforce its orders); and In re Franklin, 802 F.2d 324, 326 (9th Cir.1986) (recognizing the importance of the bankruptcy court to retain jurisdiction in order "to be capable of monitoring whether those orders are ultimately executed in the intended manner").

Here, Capriati seeks relief for SPER's continued violation of the Plan/Discharge Injunction, and for SPER's prior violation of the Automatic Stay.  Therefore, these matters are clearly "connected with" the bankruptcy estate, and well within the jurisdiction of this Court.

**B.     SPER Has Willfully and Maliciously Violated the Discharge Order and Plan Injunction By Usurping/Converting Property of the Estate/Reorganized Debtor, Therefore, Sanctions Are Appropriate.**

11 U.S.C. §1141(d)(1) provides in pertinent part that the confirmation of a Plan "**discharges** the debtor from any debt that arose before the date of such confirmation. . ." [Emphasis added.]  11 U.S.C. §524(a)(1) further provides that, " A discharge in a case under this title . . . operates as an **injunction** against the commencement or continuation of an

action, the employment of process, or an act, to collect, recover or offset any such debt . . ."
[Emphasis added.] The remedy for violating the Discharge Injunction is an Order of
Contempt. *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186 (CA9 2011); *see also, In re
Zilog, Inc.,* 450 F.3d 996, 1008 (9th Cir.2006) ("A party who knowingly violates the discharge
injunction can be held in contempt under section 105(a) of the bankruptcy code.")
Additionally, Section (b) of §1141 provides in pertinent part that, "the confirmation of a plan
**vests all of the property of the estate in the debtor**." [Emphasis added.]

Here, SPER has willfully <u>violated</u> the Discharge Order/Plan Injunction by seeking to
collect upon a discharged debt (SPER Proof of Claim No. 28, 28-1), and usurp and convert
property of the estate/Reorganized Debtor, via very creative pleading and lawyering – SPER
has sued Capriati's sole shareholder, David Rocchio Sr. ("Rocchio") **whom SPER admits
did <u>not</u> personally guarantee the discharged debt**, under the "<u>derivative</u>" theories of
liability of *Alter Ego* and *Fraudulent Transfer* in an effort to collect upon SPER's discharged
debt ("State Court Action") (*See*, SPER Second Amended State Court Complaint, attached
hereto as Exhibit "1".)  In short, SPER cunningly seeks to recover the discharged debt from
Capriati by suing Rocchio as the *Alter Ego of Capriati*, and/or via the "derivative" theory of
liability of *Fraudulent Transfers*.

SPER's inventive allegations, however, do not change the fact that she is substantively
still **seeking to collect on a discharged debt**.  Moreover, as discussed *infra*, Alter Ego claims
and Fraudulent Transfer claims are **property of the estate** pursuant to 11 U.S.C. §541, which
<u>revested</u> in the Reorganized Debtor upon Confirmation pursuant to 11 U.S.C. §1141(b).  (*See*

*also*, Section 9.1 of Capriati's Confirmed Plan [Dkt. No. 485].)  Therefore, SPER is willfully, maliciously, and unlawfully violating the Discharge Injunction and Plan Injunction by usurping and converting property of the estate/property of the Reorganized Debtor.

### 1. Fraudulent Conveyance Actions Are Property of the Estate, Which Re-vested In the Reorganized Debtor Upon Confirmation.

Section 548(a) of the Code expressly authorizes a "trustee" to avoid any pre-petition "fraudulent transfers".  11 U.S.C. §548(a)(1).  Section 544(b) further authorizes the "trustee" to avoid any pre-petition transfer of the debtor's property if the transfer could be avoided under applicable law by an unsecured creditor holding an allowable claim.  "Applicable law" within the purview of 544(b)(1) includes state fraudulent transfer law, including Nevada's enactment of the Uniform Fraudulent Transfer Act ("UFTA") as codified in NRS Chapter 112.  *Decker v. Tramiel (In re JTS Corp.)*, 617 F.3d 1102, 1111 (9th Cir.2015).

Moreover, courts have universally held that a trustee has the <u>exclusive</u> standing to bring fraudulent transfer actions; and absent court order otherwise, individual creditors lack standing to prosecute fraudulent transfers in their own right and for their own benefit, even if said creditor would have standing to do so outside of the bankruptcy.  *Ahcom, Ltd. v. Smeding,* 623 F.3d 1248, 1252 (9th Cir.2010) (noting that rights of action properly brought by the trustee including fraudulent transfer actions); *CarrAmerica Realty Corp. v. Nvidia Corp.* (In re 3dfx Interactive, Inc.), 302 Fed. Appx. 514, *1-2 (9th Cir.2008) (affirming the district court's decision that because the substance of the creditors' claims involved a debtor's fraudulent transfer of assets, thereby depleting the assets available for the bankruptcy estate, it

was an injury to the debtor corporation, <u>not</u> to individual creditors of that corporation, and thus, the trustee had <u>exclusive</u> standing to sue with respect to all such claims [Emphasis added.]); *In re Howrey LLLP*, 2014 WL 3899309 at *4 (N.D.Cal. Aug. 8, 2014) (holding that the "[t]rustee has an <u>exclusive</u> power to bring the claim brought by [a creditor] predicated on a fraudulent transfer theory." [Emphasis added.]); *In re Pac. Gas & Elec. Co.,* 281 B.R. 1, 13 (Bankr.N.D.Cal.2002) ("Absent court approval, <u>only</u> a trustee or debtor in possession has standing to assert a fraudulent transfer action." [Emphasis added.]).

In its State Court Action, SPER alleged, in pertinent part, that:

- Rocchio received "significant large transfers of money" from Capriati during the time period of December 2013 through May 2015. (*See*, SPER Amended Complaint dated March 9, 2017, ¶ 13, attached hereto as Exhibit "1.")

- The above-referenced transfers total more than $400,000 and were inconsistent with the ordinary course of payments at a time when Rocchio and Capriati were insolvent. (Exhibit "1",¶ 14.)

- Based upon information and belief, after May 2015 additional transfers were made to Rocchio from Capriati while Capriati was insolvent. (Exhibit "1",¶ 15.)

- Based upon information, Rocchio did not give any equivalent exchange or value for the transfers from Capriati and has failed to repay the draws and/or distributions. (Exhibit "1",¶ 16.)

- Defendant Rocchio is an insider of Capriati Construction Corp., Inc. (Exhibit "1",¶ 18.)

- Defendant Rocchio and Capriati Construction Corp. Inc. were insolvent during the period 2012-2015. (Exhibit "1",¶ 19.)

- Capriati and its creditors did not receive reasonably equivalent value in exchange for the transfer. (Exhibit "1",¶ 21. [Emphasis added])

- Capriati has filed a Bankruptcy case in United States Bankruptcy Court in the District of Nevada and does not intend to pay the legitimate debt of Plaintiff and Rocchio has refused to repay the transfers made to himself. (Exhibit "1",¶ 28.)

- As a result of the fraudulent conveyances to Rocchio, Plaintiff is entitled to avoidance of the transfers, attachment of the transferred assets, injunctive relief, appointment of a receiver and judgment in excess of $10,000.00, according to proof at trial. (Exhibit "1",¶ 32.)

SPER's own State Court allegations demonstrate that SPER's Fraudulent Transfer claims are expressly within the purview of the claims that the bankruptcy trustee alone is empowered to pursue. 11 U.S.C. §548; *Ahcom, Ltd. v. Smeding,* 623 F.3d 1248, 1252 (9th Cir.2010); *CarrAmerica Realty Corp. v. Nvidia Corp.* (In re 3dfx Interactive, Inc.), 302 Fed. Appx. 514, *1-2 (9th Cir.2008); *In re Howrey LLLP*, 2014 WL 3899309 at *4 (N.D.Cal. Aug. 8, 2014); and *In re Pac. Gas & Elec. Co.,* 281 B.R. 1, 13 (Bankr.N.D.Cal.2002). Moreover, in the event that any fraudulent transfer claim prevails, the recovered assets would

-11-

unequivocally be "property of the estate", or post-confirmation, property of the Reorganized Debtor.    Thus, SPER's usurpation and prosecution of these alleged Fraudulent Transfer claims (which are property of the estate/Reorganized Debtor) clearly violates the Discharge and Plan Injunction as well as the Automatic Stay (especially since SPER's State Court Actions were commenced prior to Confirmation).    Moreover, for the reasons set forth below, it is evident that SPER's actions were willful and intentional, and that SPER will continue her abusive litigation tactics and vexatious behavior if not appropriately sanctioned.    As such, sanctions are warranted and proper, and should be issued here.

> **2.    Alter Ego Claims Are Property of the Estate, Which Re-vested In the Reorganized Debtor Upon Confirmation.**

Property of the estate pursuant to Section 541(a)(1) of the Code includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  A cause of action in which the debtor has a legal interest on the petition date constitutes property of the debtor's bankruptcy estate.  *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002 (9th Cir.2005); *Sierra Switchboard Co. v. Westinghouse Elec. Corp.,* 789 F.2d 705, 707 (9th Cir.1986); *Schnelling v. Thomas (In re Agribiotech, Inc.),* 319 B.R. 216, 219 (D.Nev.2004).    A bankruptcy trustee has the exclusive capacity to sue on behalf of the bankruptcy estate, and has the exclusive right to sue on claims belonging to the estate.    11 U.S.C. §323(a); *Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1250 (9th Cir.2010) (citing *Estate of Spirtos v. San Bernadino County Superior Court (In re Spirtos),* 443 F.3d 1172, 1175 (9th

Cir.2006); 11 U.S.C. § 704(a)(1) (the trustee shall "collect and reduce to money property of the estate for which such trustee serves").

Whether a cause of action is property of the bankruptcy estate, such that the trustee has <u>exclusive</u> standing to pursue the claim, or whether the claim belongs to individual creditors is a question of state law. *AE Rest. Assocs., LLC v. Giampietro (In r Giampietro),* 317 B.R. 841, 845 n.4 (Bankr.D.Nev.2004)(quoting *Mallard Auto. Grp., Ltd. v. LeClair Mgmt. Corp.,* 153 F.Supp.2d 1211, 1213 (D.Nev.2001).) Where state law permits an alter ego claim to be asserted by a corporation in its own name, such a right is **property of the estate**, assertable <u>only</u> by the bankruptcy trustee or the debtor-in-possession, **and a claim by a creditor against the debtor's affiliate based solely on an alter ego theory is therefore <u>barred</u> for *lack of standing and under the automatic stay*.** *Trustees of the Constr. Indus. & Laborers Health & Welfare Trust v. Vasquesz,* 2011 WL 4549228 at *2 (D.Nev.Sept.29, 2011) [Emphasis added]. *See also, In re AgriBioTech, Inc.,* 319 B.R. 216, 220 (2004) ("Where the injury alleged is primarily to the corporation, and is injury to the plaintiff creditor only insofar as it decreases the assets of the corporation to which he must look for satisfaction of his debt, then the suit is for a tort suffered by the corporation, and properly brought by the trustee; if there is a special damage to the creditor suing, not common to other creditors, then it is a personal creditor action which the trustee may not pursue" [citation omitted].)

Here, Nevada state law clearly permits and authorizes an alter ego claim to be asserted by a corporation in its own name ("self-piercing"). *Vasquez* at 2011 WL 4549228 at *2 ("Nevada law is identical to Texas law in permitting a corporation to bring an alter ego claim

in its own name"). *See also generally, In re Western World Funding, Inc.*, 52 B.R. 743, 783-84 (Bankr.D.Nev. 1985) ("Under the Nevada alter ego doctrine, the corporation has, in some sense, and equitable interest in the assets of its alter ego, because the corporation and the alter ego are identical.); and *In re AgriBioTech, Inc.*, 391 B.R. 216, 219 (D.Nev.2004) ("The debtor's estate therefore includes any causes of action of the debtor at the commencement of the bankruptcy proceedings."). Moreover, when an entity is the alter ego of the debtor**, the debtor "has an equitable interest in the assets of its alter ego,"** *Western World,* 52 B.R. at 784, **and the right to assert an alter ego claim against said entity is property of the bankruptcy estate.** *Vasquez*, 2011 WL 4549228 at *2 [Emphasis added].

As such, it is evident that the Alter Ego asserted by SPER in the State Court Action (wherein <u>no</u> individualized or particular injury to SPER alone is even alleged), is clearly property of the estate, which re-vested in the Reorganized Debtor upon confirmation. 11 U.S.C. §541; §1141(b); and Section 9.1 of Capriati's Confirmed Plan [Dkt. No. 485]. Therefore, SPER's State Court Action, seeking to prosecute and benefit from an Alter Ego claim that belongs to the estate/Reorganized Debtor violates the Discharge and Plan Injunction by usurping and converting the property of the estate/Reorganized Debtor. SPER's actions are also acts "to obtain possession of property of the estate or of property from the estate" in violation of §362(a)(3). *See, Vasquez* at *2. Accordingly, sanctions against SPER for its willful violations are appropriate and warranted; and should be issued forthwith.

**3.    SPER's Violations Are Willful, Intentional & Malicious.**

To be subject to sanctions for violating the discharge injunction, a party's violation must be "willful". The Ninth Circuit applies a two-part test to determine whether the willfulness standard has been met: (1) knew the discharge injunction was applicable[2]; and (2) intended the actions which violated the injunction. *In re Vanamann*, 561 B.R. 106, 123 (Bankr.D.Nev.2016), *citing to In re Nash*, 464 B.R. 874, 880 (9th Cir.BAP 2012), *citing to Espinosa v. United Student Aid Funds, Inc.,* 553 F.3d 1193, 1205 n. 7 (adopting the standard articulated in *Hardy v. United States (In re Hardy),* 97 F.3d 1384, 1390 (11th Cir.1996).) For the second prong, the bankruptcy court's focus is not on the offending party's subjective beliefs or intent, but on whether the party's conduct in fact complied with the order at issue. *Id., citing to Bassett v. Am. Gen. Fin. (In re Bassett)*, 255 B.R. 747, 758 (9th Cir. BAP 2000), *rev'd on other grounds*, 285 F.3d 882 (9th Cir. 2002). "A party's negligence or absence of intent to violate the discharge order is <u>not</u> a defense against a motion for contempt." *Id., citing to Jarvar v. Title Cash of Mont., Inc. (In re Jarvar)*, 422 B.R. 242, 250 (Bankr. D.

---

[2] *See, Espinosa* at 1205, n. 7, stating:

Mont. 2009)(citing *Atkins v. Martinez (In re Atkins)*, 176 B.R. 998, 1009–10 (Bankr. D. Minn. 1994)); *see also In re Sanburg* [*Sandburg* ] *Fin. Corp.*, 446 B.R. 793, 804 (S.D. Tex. 2011)(that the offending party may have not understood its actions to violate the discharge injunction does not negate the willfulness finding, even if true).

The moving party must prove by clear and convincing evidence that the offending party violated the order. *Id., citing to Rosales v. Wallace (In re Wallace),* 2012 WL 2401871 at *5 (9th Cir.BAP June 26, 2012), *citing to In re Zilog, Inc.*, 450 F.3d at 1007; *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir. 2003. ) The moving party also has this same burden to prove that sanctions are justified. *Espinosa*, 553 F.3d at 1205 n.7. The burden then shifts to the offending party to demonstrate why it was unable to comply. *In re Bennett*, 298 F.3d, 1059 at 1069 [(9th Cir.2002)]. If a bankruptcy court finds that a party has willfully violated the discharge injunction, it may award actual damages, punitive damages and attorney's fees to the debtor. *In re Nash*, 464 B.R. at 880 (citing *Espinosa*, 553 F.3d at 1205

---

> That the creditor may have believed that the discharge was inappropriately entered, or that it could be set aside under Rule 60(b), is of no consequence. A creditor is not free to violate the discharge injunction because it has doubts as to the validity of the discharge. If the creditor believes the discharge is defective, it may petition the bankruptcy court to reopen and set aside the judgment under Rule 60(b), but it may not commence collection proceedings unless and until the court grants such relief. If the bankruptcy court finds that the creditor here willfully violated the injunction, it shall, at the very least, impose sanctions to the extent necessary to make Espinosa whole. *See* 2 Collier Bankruptcy Manual (3d rev. ed.) ¶ 524.02[2][c] ("In cases in which the discharge injunction was violated willfully, courts have awarded debtors actual damages, punitive damages and attorney's fees.") (footnote omitted).

n.7 (citing 2 Collier Bankruptcy Manual ¶ 524.02[2][c] (3d Rev. Ed.)). The bankruptcy court has broad discretion in fashioning a remedy for violation of the discharge injunction. *In re Bassett*, 255 B.R. at 758.

Here, it is evident that both of these prongs have been <u>satisfied</u>; and that sanctions are justified. SPER is the entity owned by Susan Frankewich, Esq. ("Frankewich") which entity was created and exists solely for the purpose of providing legal services. (*See*, Frankewich Deposition Transcript, p. 207; ll. 14-19; p. 213, ll. 1-11; p. 219, ll. 2-8, attached hereto as Exhibit "3") Frankewich has been licensed to practice law in Nevada since 1984, **and has been practicing in the field of bankruptcy** *since 1984* (*See*, Exhibit "3" p. 246, ll. 9-24.) Thus, it is inconceivable that Frankewich/SPER would not know that the discharge injunction was applicable here pursuant to the Confirmation of Capriati's Plan (which was adamantly contested by SPER). Despite this knowledge, after failing on her allegations in Bankruptcy Court, SPER took affirmative actions to initiate a vexatious State Court litigation under the theories of Alter Ego and Fraudulent Transfer. Notably, these are the exact same claims alleged by SPER in multiple objections to Debtor's Disclosure Statement and to Confirmation, for which she adamantly argued, yet presented <u>no</u> evidence at the time of trial. [Dkt. Nos. 254, 259, 398, 527, 573, and 621.] **After months of casting a multitude of false accusations in baseless, frivolous pleadings, at the time of trial, SPER was unable to produce a** *single* **witness, or a** *single* **piece of documentary evidence, to support** *any* **of her outlandish accusations.** Despite this fact, SPER continued her vindictive crusade in State Court. Thus, it is inevitable to conclude that SPER's actions were intended and

intentional, not to mention vexatious and malicious.  Moreover, SPER's actions have clearly violated the Discharge Injunction and Plan Injunction, as well as the Automatic Stay.  Given the history of SPER's tenacious and abusive litigation tactics, it is evident that the contentious and vexatious actions of SPER demonstrate that SPER will continue to engage in this type of improper behavior, unless appropriate sanctions and admonitions are issued here.  Therefore, sanctions are warranted and appropriate, and must be issued here.

**C.    SPER's State Court Litigation Also Willfully Violated the Automatic Stay, Therefore, Sanctions are Appropriate and Warranted.**

As set forth above, the Alter Ego and Fraudulent Transfer claims alleged by SPER are clearly property of the estate.  It has long since been established and acknowledged that "[a]ny act to obtain possession of property of the estate or property from the estate is subject to the automatic stay." *Vasquez* at 2011 WL 4549228 at *3.  The automatic stay is "self-executing, effective upon the filing of the bankruptcy petition," and acts as "an injunction issuing from the authority of the bankruptcy court." *Id* at *3, *citing to Gruntz v. County of Los Angeles (In r Gruntz),* 202 F.3d 1074, 1081-82 (9th Cir.2000)(en banc).  Moreover, it is well established that actions taken in violation of the automatic stay, including judicial proceedings, are void.  *Id, citing to Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir.1992).

A party violating the automatic stay, through continuing a collection action in a non-bankruptcy forum, must automatically dismiss or stay such proceeding or risk possible sanctions for willful violations pursuant to §362(h).  Moreover, a "willful violation" does not

-18-

require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is <u>not</u> relevant to whether the act was "willful" or whether compensation must be awarded. *In re Bloom*, 875 F.2d 224 (9th Cir.1989), c*iting to INSLAW, Inc. v. United States (In re INSLAW, Inc.),* 83 B.R. 89, 165 (Bankr.D.D.C.1988).

Here, SPER/Frankewich has over 30 years of bankruptcy law experience, and as such, is acutely aware of the ramifications and implications of the automatic stay. Despite this knowledge, SPER/Frankewich willfully and intentionally filed the State Court Action seeking to prosecute on Alter Ego and Fraudulent Transfer claims that were property of the estate at the time the State Court Action was commenced. Because the State Court Action was commenced well prior to Confirmation, and while the Automatic Stay was in full force and effect, SPER's actions, expressly violated the Automatic Stay. Additionally, the State Court Action commenced by SPER in direct violation of the Automatic Stay is *per se* <u>void</u> and must be dismissed forthwith. Finally, SPER must be duly sanctioned for its improper and violating behavior, and to ensure that SPER will not continue to engage in the same or similar vexatious actions, to the harm and detriment of Capriati. Therefore, significant sanctions are warranted and appropriate, and should be issued forthwith.

**D.    SPER HAS <u>NO</u> INDIVIDUALIZED INJURIES.**

In an effort to usurp claims properly belonging to the estate, creative creditors have often attempted to plead around a general claim by alleging a "specific injury" such as an

unpaid debt or closely related cause of action that is arguably unique to that creditor.  *See, e.g., In re S.I. Acquisition, Inc.,* 817 F.2d 1142 (seeking to pursue an independent alter ego action against a debtor's principals due to the debtor's failure to make payments in accordance with the debtor's contract terms).  In these instances, the courts have looked past the face of the complaint to analyze the fundamental wrongdoing alleged. And when the same factual nexus gives rise to both a cause of action assertable by the trustee and a cause of action assertable by a creditor, both causes of action must vest <u>exclusively in the trustee</u> until they are abandoned.  *Hoyt v. Aerus Holdings, LLC,* 447 B.R. 283, 287 (Bankr. D. Ariz. 2011). As aptly explained by the Fourth Circuit:

> To allow select creditors to artfully plead their way out of a bankruptcy court would **unravel the bankruptcy process and undermine the ordered distribution of the bankruptcy estate**. The goal of bankruptcy is to consolidate the proceeding and avoid piecemeal litigation – a goal that would be sacrificed by permitting the district court to entertain the merits of the Sureties' suit. Reserving the action for the trustee maintains the integrity of the bankruptcy proceeding and ***ensures that individual creditors cannot hijack the bankruptcy process.***  If it were otherwise, there would be a multi-jurisdictional rush to judgment whose organizing principle could only be first-come-first-served.

*Nat'l Am. Ins. Co., v. Rupert Landscaping Co*., 187 F.3d 439, 442 (4th Cir. 1999) [Emphasis added.]  As otherwise stated, where the creditor:

> . . . has not alleged any harm independent of that suffered by the Debtor, any cause of action is **property of the estate** to be administered **for the benefit of creditors generally** and <u>not</u> only to [the creditor]. . . to allow select creditors to artfully plead their way out of the bankruptcy court would unravel the bankruptcy process and undermine an orderly distribution of the bankruptcy estate.

-20-

*In re Shubh Hotels Pittsburgh, LLC*, No. 10-26337, 2011 WL 7109364 at *3-4 (Bankr. W.D. Pa. May 16, 2011) [Emphasis added].

Here, the inquiry is simple, as *SPER has not even alleged any particularized or special injury* that is in any way unique or specific to SPER.  In fact, SPER's own allegations acknowledge that the alleged injury is generalized.  (See, Exhibit "1"3.09.17 AMENDED COMPLAINT , ¶ 21:  "**Capriati *and its creditors*** did not receive a reasonably equivalent value in exchange for the transfer.")  Accordingly, it is patently clear and evident that the Alter Ego and Fraudulent Transfer claims alleged by SPER in its State Court Action, are properly property of the estate/Reorganized Debtor, and that SPER lacks standing to bring these claims.  Moreover, SPER's State Court Action improperly usurps and converts property of the estate and of the Reorganized Debtor in violation of the Automatic Stay and Discharge and Plan Injunction.  Therefore, sanctions are appropriate and warranted, and should be issued here.

**E.      SPER Should Be Further Sanctioned for Its Continued Bad Faith.**

The federal courts have the inherent power to levy a contempt sanction "to protect the due and orderly administration of justice" and "maintain the authority and dignity of the court".  *Primus Automotive Financial Services, Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir.1997).   When a losing party has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons," *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59,

-21-

95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975)(quotation omitted), sanctions under the court's inherent powers may take the form of attorney's fees. Before awarding sanctions under its inherent powers, however, the court must make an explicit finding that counsel's conduct "constituted or was tantamount to bad faith." *Roadway Express,* 447 U.S. at 767, 100 S.Ct. at 2465; *see also In re Keegan,* 78 F.3d at 436; *United States v. Stoneberger,* 805 F.2d 1391, 1393 (9th Cir.1986).

For sanctions to apply, if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass. Thus, while it is true that reckless filings may be sanctioned, and nonfrivolous filings may also be sanctioned, reckless nonfrivolous filings, without more, may not be sanctioned. *In re Keegan Management Co., Securities Litigation*, 78 F.3d 431, 436 (9th Cir. 1996).   A finding of bad faith is warranted where an attorney "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *In re Keegan,* 78 F.3d at 436 (citation omitted).  A federal court "certainly may assess [sanctions] against counsel who willfully abuse judicial processes."  *Rodway Express Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).  The federal courts are also expressly empowered under 28 U.S.C. §1927 to sanction litigants, as well as their attorneys for bad faith and vexatious litigation.

Here, SPER has, and continues to act in bad faith, and has and continues to engage in abusive litigation tactics which have prevented Capriati from realizing the "fresh start" policy of bankruptcy law.  SPER's bad faith and vexatious/abusive acts include, but are not limited to:

- Filing multiple unfounded, meritless, and frivolous objections in Debtor's bankruptcy case [Dkt. Nos. 254, 259, 398, 527, 573, and 621.];

- Soliciting votes against Debtor's Plan by underrepresenting to creditors that Frankewich was Debtor's bankruptcy counsel [Dkt. Nos. 604, 606, 694, and 695.]motion to designate and 2 supporting declarations];

- Frivolously objecting to Debtor's confirmation by manipulating and misrepresenting information Frankewich obtained through her prior attorney-client privileged representation of Debtor in its corporate matters;

- Filing State Court claims for Alter Ego and Fraudulent Transfer, when those claims are property of the estate/property of the Reorganized Debtor, and in violation of the Discharge and Plan Injunction and the Automatic Stay;

- Sending vexatious discovery to Rocchio to harass Capriati, including, but not limited to:

  o Produce a copy of all correspondence, e-mails, notes or other written communication between you, *or on behalf of **Capriati** Construction Corp*., and any attorney or law firm providing representation regarding non-payment of attorney billing statements or sums due. (Exhibit "4", SPER Second Set of Requests for Production of Documents, Request No. 11.)

  o Produce a ledger of listing of all unpaid attorneys or law firms by Capriati Construction Corp. during the years 2011, 2012, 2013, 2014 and 2015. (Exhibit "4", Request No. 12.)

o   Produce a ledger or listing of all unpaid accountants, experts, appraisers, engineers or other professionals by Capriati Construction Corp. during the years 2011, 2012, 2013, 2014 and 2015. (Exhibit "4", Request No. 13.)

o   Produce a copy of all checks by you or Capriati Construction Corp or another third party, to the Law Offices of Kung & Brown, or its attorneys, during the years 2015 and 2016. (Exhibit "4", Request No. 15.)

o   Produce a copy of all checks or evidence of payment by Rocchio to Capriati Construction Corp. during the Capriati bankruptcy case. (Exhibit "4", Request No. 17.)

o   Produce a copy of any dispute, correspondence, written communication, resolution or settlement and payment check between Capriati Construction Corp. and Fennemore Craig Law Firm regarding legal fees during the years 2013, 2014 and 2015. (Exhibit "4", Request No. 23.)

o   Produce a copy of any dispute, correspondence, written communication, resolution or settlement and payment check between Capriati Construction Corp. and any attorney or law firm during the years 2013, 2014 and 2015. (Exhibit "4", Request No. 24.)

o   Produce a copy of any dispute, correspondence, written communication, resolution or settlement and payment check between Capriati Construction Corp. and any accountant, appraiser, expert, engineer or other professional. (Exhibit "4", Request No. 25.)

    o   Produce a copy of any check or payment directed by you on behalf of Capriati Construction Corp. to any creditor listed in the Capriati bankruptcy schedules of liabilities/debts in repayment of any sum represented by the schedules. (Exhibit "4", Request No. 26.)

    o   A list including name, address and amount owed of all unpaid creditors of Capriati for the years 2012, 2013, 2014 and 2015. (See, SPER's Third Set of Requests for Production of Documents, attached hereto as Exhibit "5", Request No. 6.)

    o   A copy of all documents shown to, or given to, William Leonard for purposes of the preparation of his expert report filed in the Capriati bankruptcy case. (Exhibit "5", Request No. 9.)

    o   A copy of all draft reports, e-mails, correspondence or other written documents between William Leonard and David Rocchio or Capriati Construction regarding the preparation of Leonard's Expert Report in the Capriati bankruptcy case. (Exhibit "5", Request No. 10.)

When viewed in its entirety, the vexatious and abusive litigation tactics of SPER/Frankewich are obvious, and clearly in **bad faith**. SPER/Frankewich have litigated, and continue to litigate in bad faith, in hopes of extorting a settlement from Rocchio/Capriati for SPER/Frankewich's legal bills that were duly discharged in bankruptcy. This type of **vindictive litigation**, undertaken for the ulterior motive of harassing and oppressing Capriati,

and to extort funds from Capriati and/or Rocchio to compensate for a discharged debt, must not be condoned by this Court, and appropriate sanctions must be issued forthwith.

### CONCLUSION

WHEREFORE, based on the foregoing, Capriati respectfully requests that this Court issue an Order of Contempt as to SPER and Frankewich; and an Order for Sanctions and Attorney's Fees under 11 U.S.C. §524(a)(2), §105(a), §362(a)(2),(3) and (4), §1327(c), Bankruptcy Rule 9020, and 28 U.S.C. § 1927.  Capriati respectfully submits that sanctions in the sum of not less than $25,000.00 are appropriate here, plus an award of attorney's fees to be determined by a separate application for the same.

DATED this 5th day of April, 2017.

Respectfully Submitted,

KUNG & BROWN

By:  __/s/ AJ Kung__

A.J. Kung, Esq.

Nevada Bar No. 7052
Brandy Brown, Esq.
Nevada Bar No. 9987
214 S. Maryland Parkway
Las Vegas, Nevada 89101
 (702)382-0883
 (702)382-2720 Fax
ajkung@ajkunglaw.com
bbrown@ajkunglaw.com
*Attorneys for Debtor*

LIST OF EXHIBITS                    CASE NO: BK-15-15722-abl

| # | Description |
|---|---|
| 1 | SPER Amended Complaint dated March 9, 2017 |
| 2 | State Court Register of Action |
| 3 | Frankewich Deposition Transcript |
| 4 | SPER Second Set of Requests for Production of Documents |
| 5 | SPER's Third Set of Requests for Production of Documents |