**RPLY**
A.J. Kung, Esq.
Nevada Bar No. 7052
Georlen K. Spangler, Esq.
Nevada Bar No. 3818
**KUNG & BROWN**
214 South Maryland Parkway
Las Vegas, Nevada 89101
(702) 382-0883 Telephone
(702) 382-2720 Facsimile
E-Mail: ajkung@ajkunglaw.com
gspangler@ajkunglaw.com
*Attorneys for Debtor*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| In re:<br><br>CAPRIATI CONSTRUCTION CORP. INC.<br><br>Debtor. | CASE NO.: BK-15-15722-abl<br><br>Chapter 11<br><br>**HEARING DATE: MAY 15, 2017**<br><br>**HEARING TIME: 1:30 PM** |

**DEBTOR'S REPLY TO SPER INC'S OPPOSITION TO DEBTOR'S MOTION FOR CONTEMPT OF COURT; AND FOR SANCTIONS AND ATTORNEY'S FEES FOR CREDITOR SPER INC.'S WILLFUL VIOLATION OF: (1) THE PLAN INJUNCTION/DISCHARGE PURSUANT TO 11 U.S.C. §524 AND §1141; AND (2) THE AUTOMATIC STAY PURSUANT TO 11 U.S.C §362.**

Debtor, by and through counsel, the law firm of Kung & Brown, hereby Replies to SPER Inc.'s Opposition to Debtor's Motion for Contempt of Court; For Sanctions and Attorney's Fees for Creditor SPER's Willful Violation of: (1) the Plan injunction/Discharge Pursuant to 11 U.S.C. §524 and §1141; and (2) the Automatic Stay pursuant to 11 U.S.C. §362 ("Sanctions Motion") as set forth below.

**I.**

**SUMMARY OF REPLY**

SPER has falsely accused Debtor of nefarious actions since the commencement of Debtor's case. SPER's specious and baseless allegations were set forth in SPER's Objection to Adequacy of the Disclosure Statement and Confirmation of Plan of Reorganization [ECF No. 254], SPER's Ballot Rejecting Plan of Reorganization [ECF No. 259], SPER's Supplemental Objection to Adequacy of Second Amended Disclosure Statement [ECF No. 398], SPER's Objection to Amended Third Amended Disclosure Statement [ECF No. 527], SPER's Initial Objection to Confirmation of Debtor's Amended Plan of Reorganization [ECF No. 573], and SPER's Supplemental Objection to Confirmation of Debtor's Chapter 11 Plan of Reorganization [ ECF No. 621]. SPER was the sole objecting creditor at Debtor's Confirmation Trial, and SPER was afforded ample opportunity at trial to support her fallacious allegations of wrong-doing by Debtor. **At the close of trial, it was abundantly evident that SPER's accusations were wholly without merit**, or support in fact or law. To wit, SPER presented no witnesses at trial, and entered only one document into evidence, which document was Debtor's Feasibility and Liquidation Analysis Expert's written report (wherein the Expert concluded that there were no viable fraudulent transfer or avoidance actions in this case.

It was further apparent by the close of trial that SPER (the corporate entity owned and operated by counsel, Susan Frankewich) was merely objecting and litigating against Debtor out of spite and vengeance; or to extort payment from Debtor. SPER, which is represented by its sole shareholder and owner, Frankewich, can litigate with impunity, because Frankewich is a licensed attorney, litigating her own claim, and incurring no fees for legal services in the process. Contrarily, Debtor has incurred significant and extensive legal fees in battling the specious and frivolous claims of this disgruntled creditor.

Debtor was hopeful that SPER would discontinue its vengeful litigation after it was demonstrated at the time of trial that SPER's accusations were wholly without factual support. Unfortunately for Debtor, however, SPER continues her campaign of harassment by continuing to seek to recover on the discharged debt from Debtor's principal, David Rocchio Sr. ("Rocchio"), under the "derivative liability" theories of "Fraudulent Transfer" and "Alter Ego,"[1] in the State Court action commenced by SPER[2].

Because it is so patently clear under bankruptcy law that Fraudulent Transfer actions and Alter Ego claims are *property of the bankruptcy estate*, and as such, **SPER does not have standing to pursue these claims which rightfully and legally belong to the Reorganized Debtor**, Debtor was confident that the State Court action would be summarily dismissed. Unfortunately, however, the State Court has not understood these Bankruptcy concepts[3], and as such, the motions to dismiss and/or for summary judgment have been denied, *without prejudice*, at the State Court level.

As such, SPER has continued to litigate these claims, which legally belong to the Reorganized Debtor; and has continued to seek to recover the discharged debt under these derivative and dependent theories of liability which are extinguished when the underlying debt is extinguished via Confirmation and Discharge. SPER's litigious actions are in violation of the Automatic Stay (since SPER's action was commenced while the Automatic Stay was still in effect), as well as in violation of the Plan Injunction and Discharge Injunction (because SPER continues to wrongfully usurp and litigate these claims post-confirmation). Therefore, SPER is in

---

[1] It is important to note that SPER has expressly acknowledged that the discharged debt was not personally guaranteed by Rocchio, and that SPER is not proceeding under any "personal guaranty" theory of liability. See, Hearing Transcript from March 08, 2017 State Court Hearing, p.3, 11-13, attached hereto as Exhibit "6"

[2] See, SPER Amended Complaint in Case No. A-15-726171-C, attached hereto as Exhibit "7."

[3] Although State Court Senior Judge Hardcastle did understand and agree with the position, she stated that she was "compelled" to allow the action to continue because she was filling in for the sitting Judge.

KUNG & BROWN
214 South Maryland Parkway
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

Contempt of Court, and must be <u>sanctioned</u> for her willful and malicious violation of the Automatic Stay and Plan/Discharge Injunction.

As a final note, it is relevant to acknowledge that SPER's Opposition utterly fails to controvert the substance of Debtor's Motion, but rather merely seeks to muddy the waters with more unfounded accusations of alleged wrong-doing by Debtor.  **Nothing contained in SPER's Opposition refutes Debtor's allegations and arguments that Alter Ego claims and Fraudulent Transfer claims are <u>property of the estate</u>, which vested in the Reorganized Debtor upon Confirmation; and that <u>SPER's unilateral and unauthorized commandeering the property of the estate (pre-Confirmation) violated the Automatic Stay, and post-petition, violated the Plan and Discharge Injunction</u>.**  As such, it is evident that SPER's willful and malicious actions are in contempt of court, violated the Automatic Stay and the Plan/Discharge Injunction, and are worthy of <u>sanctions</u>.

## II.

## <u>REPLY</u>

**A.  SPER SPECIOUSLY AVERS THAT DEBTOR WAS REQUIRED TO DISCLOSE "THE EXISTENCE OF THE TRUE SALARY/DRAW OR A POSSIBLE AVOIDANCE ACTION AGAINST ROCCHIO."**

Debtor did not list a "possible avoidance action against Rocchio" in its Schedules or Statement of Financial Affairs because Debtor did not, and does not, believe that any such claim exists. Debtor duly disclosed all payments to insiders as required by question 30 in the Statement of Financial Affairs ("SOFA"), which expressly listed payments to Rocchio as $352,730.00 in draws/salary. (*See*, SOFA, question 30, attached hereto as Exhibit "8.")  Additionally, Debtor further disclosed all payments to Rocchio within two years of the petition date. (See, Payments to Insiders on Supplement to Application to Employ K&B, attached hereto as Exhibit "9.")

**KUNG & BROWN**
214 South Maryland Parkway
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

Moreover, these salary payments to Rocchio were the subject of SPER's many Objections[4] and was the crux of SPER's Objection to Confirmation, which was fully litigated by SPER at the Confirmation Trial.

Finally, it should be noted that Debtor's Expert definitively concluded that the salary received by Rocchio from Debtor within the applicable look back periods was not fraudulent or avoidable because they were within the established range for salaries paid for commiserate positions and services rendered.

## B. DEBTOR DID NOT CONCEAL OR MAKE MISREPRESENTATIONS.

SPER continues to cast baseless accusations without any factual or legal support. SPER's Opposition accuses Debtor of "concealing" Rocchio salary/draws from 2011-2015[5], despite the fact that there is no law or statute which requires Debtor to disclose all payments to insiders beyond the two years directly preceding the bankruptcy filing. Moreover, SPER acknowledges that Debtor did duly disclose all salary/draws paid to Rocchio within two years of the petition date. The balance of SPER's frivolous accusations are similarly wholly without merit or relevance, and merit no further written response.

## C. THE DOCTRINE OF JUDICIAL ESTOPPEL IS NOT APPLICABLE HERE.

SPER avers that Debtor is judicially estopped from staking claim to the "Fraudulent Transfer" and "Avoidance Actions" that SPER is improperly litigating in State Court because Debtor allegedly failed to disclose those claims as assets. Assuming, *in arguendo*, Debtor was required to list these frivolous claims as assets, but failed to do so, the doctrine of Judicial Estoppel

---

[4] See, Dkt. Nos. 254, 259, 398, 527, 573, and 621.

[5] *See*, SPER Opposition, page 7.

KUNG & BROWN
214 South Maryland Parkway
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

as briefed by SPER, would now bar Debtor from prosecuting these claims – a result which Debtor will gladly agree and accept. What the doctrine does not provide, however, is that the claim would somehow then become property of SPER. As such, application of simple logic and common sense alone are sufficient reveal the speciousness of SPER's argument, and the foolishness of SPER's claim.

### D. ROCCHIO DOES NOT SEEK THE PROTECTION OF THE AUTOMATIC STAY OR PLAN/DISCHARGE INJUNCTION.

Rocchio is not alleging, nor has he ever alleged, that he is "protected by the Automatic Stay" or the "Plan/Discharge Injunction." The basis of Debtor's Sanctions Motion is that ***SPER is usurping and hijacking assets of the bankruptcy estate***, which have now re-vested in the Reorganized Debtor. SPER has cunningly and creatively commenced a State Court action to collect upon a discharged debt from a non-debtor under the "derivative" theories of recovery of Alter Ego and Fraudulent Transfers – however, Debtor is a **necessary and indispensable party** to those claims[6] because those claims do not impart "*new liability*" – rather, those claims merely allow a creditor to recover a valid debt from another source – be it the Alter Ego or recipient of a Fraudulent Transfer from the Debtor. The debt sought to be recovered, however, remains the debt of the Debtor. If the debt is discharged, then it cannot be recovered from the Alter Ego of Debtor,

---

[6] The Debtor is a **necessary party** to a fraudulent transfer claim because the court must *first* determine whether a fraudulent transfer occurred as a prerequisite to setting it aside by determining whether the transferor [Capriati] became liable on a "claim" to the party seeking to set aside the transfer [SPER]; and *second* it must establish the actual intent of the transferor [Capriati] to hinder, delay, or defraud any of its creditors. *See*, *Herup v. First Boston Financial, LLC*, 121 Nev. 228, 162 P.2d 870 (2007). *See also, Swan Land & Cattle Co., Ltd.*, 148 U.S. 603, 13 S.Ct. 691 (1893)(transferor corporations were **necessary and indispensable** parties to a lawsuit involving fraudulent transfers; the right to follow the corporate funds in the hands of the defendant corporations depends upon claimant having a valid claim for damages against the transferor corporation); *Gaylord v. Kelshaw*, 68 U.S. 81, 17 L.Ed 612 (1863)(person who allegedly made the fraudulent transfer was a **necessary party** to the lawsuit because it is a debt that he owed which is sought to be collected, it is his insolvency which is to be established, and it is his fraudulent conduct that requires investigation).

KUNG & BROWN
214 South Maryland Parkway
Las Vegas, Nevada 89101
Tel: (702) 382-0883 / Fax: (702) 382-2720

*because the Alter Ego of the Debtor, is the Debtor*, *and the assets of the Alter Ego are the assets of the Debtor.* The same is true under a theory of Fraudulent Transfer.

As such, SPER's creative lawyering does not change the fact that SPER is seeking to recover on a discharged debt owed by Debtor, from Debtor's assets (whether in the hand of Debtor's alleged Alter Ego; or in the hands of a recipient of a Fraudulent Transfer from Debtor). Such is clearly and expressly forbidden by §362, §524 and §1141.

E.  **DEBTOR IS NOT SEEKING INTERVENTION BY THE BANKRUPTCY COURT; AND ABSTENTION IS INAPPLICABLE.**

Debtor is not asking this Court to interfere with the State Court action. Rather, Debtor is merely seeking sanctions against SPER for violating the Automatic Stay and Plan/Discharge Injunction by converting assets of the estate, to utilize the same in an effort to extract payment on a discharged debt from Debtor. This Court is exclusively empowered to determine what assets are "property of the estate" in a Chapter 11 proceeding; and to determine whether or not SPER's actions constitute a violation of §§362, 524 and 1141. 28. U.S.C. §1334(e). *See also, In re Icenhower*, 757 F.3d 1044, 1050 (2014) ( holding that, " 28 U.S.C. § 1334(e) grants the bankruptcy court exclusive jurisdiction—(1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." ); *In re Simon,* 153 F.3d 991, 996 (9th Cir.1998). Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case," "wherever located and by whomever held." 11 U.S.C. § 541(a). Consequently, this Court has exclusive jurisdiction to determine whether or not the Fraudulent Transfer and Alter Ego claims usurped by SPER are "property of the estate," and requested determinations can only be made by this Court.

Therefore, the doctrine of "abstention" is clearly inapplicable here.

**F.  THE DISCOVERY PROPOUNDED BY SPER DEMONSTRATES THAT SPER IS SEEKING TO RECOVER ON THE DISCHARGED DEBT FROM CAPRIATI.**

Though not relevant to these proceedings, Debtor shall clarify the allegations by SPER of sanctions against Rocchio, so that this Court is not misled by SPER's half-truths and distorted allegations.  The State Court Discovery Commissioner has, in fact, recommended sanctions against Rocchio for failing to respond to discovery requests that requested information and documents from Debtor through Rocchio, individually.  The Discovery Commissioner concluded that Rocchio was required to respond and produce on behalf of Debtor merely because Rocchio was the sole shareholder of Debtor.  The Discovery Commissioner's ruling completely disregarded Nevada's long-standing recognition of corporations as "distinct and separate legal entities" from their shareholders.  *Seaborn v. Wingfrield*, 56 Nev. 260, 48 P.2d 881, 885 (1935) ("the stockholder is to be regarded as an individual person, separate and distinct from the corporation."); *Hanley v. Sheet Metal Workers Intern. Ass'n*, 72 Nev. 52, 56, 293 P.2d 544, 546 (1956) ("They are entities, distinct and separate from their membership and subordinates, as much so as a corporation is an entity distinct from its stockholders or subordinate organizations."); *Canarelli v. Dist. Ct*., 127 Nev. 808, 815, 265 P.3d 673, 678 (2011) (*citing to Willmschen v. Trinity Lakes Improvement,* 362 Ill.App.3d 546, 298 Ill.Dec. 840, 840 N.E.2d 1275, 1280 (2005) ("Under the common law, a **corporation** is a legal entity that exists **separate** and **distinct** from its shareholders, officers, and directors.") ; *Black's Law Dictionary* 340 (6th ed. 1990) ("The corporation is distinct from the individuals who comprise it.").

By way of example, Sper addressed the following discovery to Rocchio, instead of Debtor:

Interrogatory No. 7 (Second Set):  Identify all documents shown or given to William Leonard for purposes of his preparation of the expert report/declaration in the Capriati Construction Corp. bankruptcy case.

Request for Production No. 9 (Second Set): Produce a copy of all attorney billing ents from Susan Frankewich, Esq. to Capriati Construction Corp. for the years 2011, 2012, 2013, 2014 and 2015.

Request for Production No. 10 (Second Set): Produce a copy of all checks from Capriati Construction Corp. to Susan Frankewich, Esq. for the years 2011, 2012, 2013, 2014 and 2015.

Request for Production No. 12 (Second Set): Produce a ledger or listing of all unpaid attorneys or law firms by Capriati Construction Corp. during the years 2011, 2012, 2013, 2014 and 2015.

Request for Production No. 13 (Second Set): Produce a ledger or listing of all unpaid accountants, experts, appraisers, engineers or other professionals by Capriati Construction Corp. during the years 2011, 2012, 2013, 2014 and 2015.

Request for Production No. 14 (Second Set): Produce a copy of the check paid by Fidelity & Deposit, Zurich American, or its agent, in the sum of $2500.00 to Capriati Construction Corp. in August or September 2015 which was for purposes of paying the Law Office of Susan Frankewich, Esq. for attendance at the Sequoia Electric settlement conference.

Request for Production No. 23 (Second Set): Produce a copy of any dispute, correspondence, written communication, resolution or settlement and payment check between Capriati Construction Corp. and Fennemore Craig Law Firm regarding legal fees during the years 2013, 2014 and 2015.

Request for Production No. 25 (Second Set): Produce a copy of any dispute, correspondence, written communication, resolution or settlement and payment check between Capriati Construction Corp. and any accountant, appraiser, expert, engineer or other professional.

Request for Production No. 6 (Third Set): A list including name, address and amount owed of all unpaid creditors of Capriati Construction for the years 2012, 2013, 2014 and 2015.

Request for Production No. 9 (Third Set): A copy of all documents shown to, or given to, William Leonard for purposes of the preparation of his expert report filed in the Capriati bankruptcy case.

Request for Production No. 10 (Third Set): A copy of all draft reports, e-mails, correspondence or other written documents between William Leonard and David Rocchio or Capriati Construction regarding the preparation of Leonard's Expert Report in the Capriati bankruptcy case.

Request for Production No. 11 (Third Set): A list of all lawsuits filed against Capriati Construction and/or David Rocchio during the years 2010, 2013 2014 and

2015 including the names of the parties, case number, court of jurisdiction, filing date, amount claimed by Plaintiff and disposition of the lawsuit.

<u>Request for Production No. 17 (Fourth Set)</u>:  Produce a copy of all submissions or documents advanced to Fidelity & Deposit or Zurich Insurance Company in an attempt to have payment made to the Law Office of Susan Frankewich, Esq.

<u>Request for Production No. 7 (Fifth Set)</u>:  Produce a copy of the transcript order form and proof of payment for the transcript of the deposition of Susan Frankewich taken in the Bankruptcy Case of Capriati Construction Corp.

Copies of SPER's Second Set of Interrogatories, Second Requests for Production of Documents, Third Requests for Production of Documents, Fourth Requests for Production of Documents and Fifth Set of Requests for Production of Documents are attached hereto, jointly, as, Discovery Requests, Exhibit "10".

The State Court has not yet agreed with the Discovery Commissioner's Report and Recommendation for Sanctions, and as such, no order of sanctions currently exists.  Rocchio will object to the Discovery Commissioner's Report and Recommendations because Rocchio believes that the Discovery Commissioner did not have the authority, among other things, to require Rocchio, individually, to produce Capriati information, records and documents, solely because Rocchio is the sole shareholder in Capriati.  Rocchio contended, and continues to contend, that the discovery requests requesting documents from Capriati should properly have been addressed to and subpoenaed from Capriati.

## **CONCLUSION**

When viewed in its entirety, the vexatious and abusive litigation tactics of SPER/Frankewich are obvious, and clearly in **bad faith**.  SPER/Frankewich has litigated, and continues to litigate in hopes of extorting a settlement from Rocchio/Capriati for SPER/Frankewich's legal bills that were duly discharged in bankruptcy.  This type of **vindictive litigation**, undertaken for the ulterior motive of harassing and oppressing Capriati, and to extort

funds from Capriati and/or Rocchio to compensate for a discharged debt, must <u>not</u> be condoned by this Court.

WHEREFORE, based on the foregoing, Capriati respectfully requests that this Court issue an Order of Contempt as to SPER and Frankewich; and an Order for Sanctions and Attorney's Fees under 11 U.S.C. §524(a)(2), §105(a), §362(a)(2),(3) and (4), §1327(c), Bankruptcy Rule 9020, and 28 U.S.C. § 1927. Capriati respectfully submits that sanctions in the sum of not less than $25,000.00 are appropriate here, plus an award of attorney's fees to be determined by a separate application for the same.

DATED this 4th day of May, 2017.

KUNG & BROWN

By:  /s/ A.J. Kung
A.J. Kung, Esq.
Nevada Bar No. 7052
Georlen K. Spangler, Esq.
Nevada Bar No. 3818
214 South Maryland Parkway
Las Vegas, Nevada 89101
*Attorneys for Debtor*

LIST OF EXHIBITS                                          CASE NO: BK-15-15722-abl

| # | Description |
|---|---|
| 6 | Hearing Transcript from March 08, 2017 |
| 7 | SPER Amended Complaint in Case No. A-15-726171-C |
| 8 | SOFA |
| 9 | Payments to Insiders on Supplement to Application to Employ K&B |
| 10 | Discovery Requests |